The appellant, Finley Wiggins, was indicted by the Jefferson County Grand Jury for the murder of Chester Williams. Trial was had with the jury finding him guilty of murder in the second degree. The trial court sentenced him to a term of fifty years' imprisonment in the state penitentiary. From that conviction he now appeals in forma pauperis.
On August 31, 1979, appellant was employed by Mrs. Emma Williams, widow of the victim, to provide entertainment at her daughter's wedding reception. That evening, when leaving the reception, the appellant and his wife found that one of the tires on their van was flat. The two of them then returned to Mrs. Williams' apartment. Mrs. Williams escorted appellant's wife to the home of a neighbor, Mrs. Catherine Reed, wherein she used a telephone. At the time, the victim was visiting Mrs. Reed. Shortly thereafter, appellant entered Mrs. Reed's apartment, exchanged angry words with the victim and followed him outside. Appellant drew his .38 caliber pistol and shot the victim six times after the victim had gotten in his car. Evidence was presented by the appellant that, during the argument, the victim threatened to kill him. The appellant phrased the threat as follows:
 "I'm going to kill all you smart sons of b_____, especially you. Let me get my gun."
Furthermore, testimony from appellant's wife indicated that, during the argument, the victim had threatened appellant's life.
A more complete rendition of the facts and a determination of its sufficiency are unnecessary for a determination of the issues concerning the refusal of the trial court to grant a mistrial on the grounds of newspaper publicity and the refusal of the trial court to charge the jury of the state's burden of proof after giving the "Allen," or "dynamite," charge.
Appellant contends that his constitutional right to due process of law was violated when the trial court overruled his Motions for Mistrial on the grounds of newspaper publicity during the trial of the case with a non-sequestered jury. Appellant's trial commenced on October 7, 1981, and ended on October 9, 1981. At the end of each day's testimony, when the trial recessed for the evening, the jury was allowed to separate and go home for the night. On the *Page 668 
morning of October 8, 1981, defense counsel moved for a mistrial due to an article concerning appellant's prior conviction that had appeared in the morning newspaper. The newspaper article stated:
 "Wiggins was tried and convicted of the murder in June 1980 and sentenced to life in prison, but the conviction was overturned and the case was sent back to be tried again because of a technicality in the judge's charge to the jury."
The trial judge questioned each of the jurors individually to see if any of them had read this particular article. Two of the jurors admitted that they had seen a newspaper, but didn't see the article in question. Defense counsel was then permitted to question the jurors, and, after his questioning was completed, appellant's Motion for Mistrial was denied. When the court recessed that evening, the trial judge instructed the jurors not to discuss the case with anyone. The trial judge further instructed the jury not to read any newspapers or to listen to opinions of other people while in recess.
The next day on October 9, 1981, a second article concerning the trial appeared in the morning newspaper. After both sides in the case rested, defense counsel again renewed its Motion for Mistrial, which was overruled. The trial judge then gave the oral charge to the jury in which he carefully instructed the jurors that they were the triers of fact and that their verdict must be based on the evidence that they heard from the witness stand. The trial judge further insisted that the jurors not be influenced by anything they might have heard or by their prior experiences.
Later that afternoon, when the jury returned a verdict finding appellant guilty of second degree murder, the trial judge polled the jury asking each juror whether he read the newspaper or discussed the case with anyone. Each juror responded that he had not.
Jurors should not be permitted, while in the discharge of their duty, to read newspapers containing editorials or statements of fact pertaining to the trial calculated to affect their verdict. Leith v. State, 206 Ala. 439, 444, 90 So. 687
(1921); Flowers v. State, 402 So.2d 1118 (Ala.Cr.App. 1981). However, the fact that a juror has read a newspaper in which the case is discussed does not entitle the defendant to an automatic mistrial. Flowers v. State, supra.
 "Even where the jurors receive newspaper accounts of, or comments on, the case, the verdict will not be disturbed if the papers contain nothing calculated to mislead or improperly affect their minds or to prejudice their verdict, or if the court is satisfied that none of the jurors was influenced thereby. The court is not required to discharge the jury or to reverse the verdict because of a newspaper article which, it is satisfied, the jurors have neither seen nor heard . . ."
23 A C.J.S. Criminal Law § 1364 (1961).
Here there was no showing that any juror had seen any prejudicial newspaper article. The only indication is that two jurors had seen a newspaper on October 8, 1981, in which an article concerning the trial was contained. On further examination these jurors denied seeing this particular article. Furthermore, when the trial judge polled the jury when it returned its verdict, on October 9, 1981, all jurors responded that they had not read any articles that had appeared in the newspaper on either October 8 or October 9, 1981, and that they had not discussed the case with anyone.
Appellant further contends that the trial court erred for its failure to charge the jury on the burden of proof imposed upon the State by law after giving the "Allen" or "dynamite" charge to the jury. After closing arguments for both sides were given, the trial judge gave the oral charge to the jury. At 10:50 a.m., on October 9, 1981, the jury retired to the jury room to commence deliberations. At 11:40 a.m., the jury returned to the courtroom and asked the trial judge to explain the difference between first degree manslaughter and second degree murder. The trial judge restated the elements of each offense, gave further instructions on the elements of self-defense, *Page 669 
and carefully mentioned the burden of proof imposed upon the state. At 11:55 a.m., the jury retired for further deliberations, and at 2:40 p.m., the jury returned to the courtroom and was given the "Allen," or "dynamite," charge as follows:
 "THE COURT: I just want to say a few words for your consideration. I mentioned this when you all were sitting there. I mentioned that, I think, there would not be any better jury than you all. I understand you're having some difficulty reaching a verdict. That's not unusual. That's part of the trial and error method, I guess you would say.
 "If you fail to reach a verdict this case has to be restated on the Docket to try again. Everything you have seen and done here today we would have to do over again before 12 different people. Same evidence. I trust the same lawyers. The next jury is not going to be any smarter than the jury that sits here. There's not going to be anything different done. There's not going to be anything different said. As you know this is the second trial for this case.
 "Also, as you know there's a considerable expense attached to any trial. I just want y'all to think about it because — and I don't wish anyone to compromise their principles nor do I want anyone to compromise their feelings in the matter. I just say kind of re-evaluate the situation with an open mind if you can at this point. One thing is certain. The poorest result that can be reached is no result at all. Give it a try and see what you can do. Thank you very much. You may retire to the jury room.
"THE COURT: Any exceptions?
"MR. KRACKE: We would like the burdens restated.
"THE COURT: Not a chance.
 "MR. KRACKE: Note an exception to that charge. (At 2:45 P.M. the jury retired to the Jury Room for further deliberations.)"
At 3:40 p.m., the jury returned a verdict of guilty of murder in the second degree as charged in the indictment and fixed punishment at imprisonment in the penitentiary for a term of fifty years.
Appellant contends the trial court was in error in giving the jury the supplemental charge, claiming the clear purpose of any supplemental or "Allen" charge to a deadlocked jury is simply to obtain a verdict. No error is committed in supplemental instructions, including the "Allen" or "dynamite" charge, unless it is threatening or coercive in the language used. Lakev. State, 390 So.2d 1088, (Ala.Cr.App. 1980); Ala.Dig. Criminal Law, Key No. 865 (1).
It is not error for the trial court to call the jury's attention to the time and expense a new trial would entail.Poellnitz v. State, 48 Ala. App. 196, 263 So.2d 181 (1972);Watson v. State, 398 So.2d 320 (Ala.Cr.App. 1980); Galloway v.State, 416 So.2d 1103 (Ala.Cr.App. 1982).
The duration of deliberations by the jury is committed to the sound discretion of the trial court and the exercise of that discretion will not be disturbed on appeal except for clear abuse. Hammons v. State, 371 So.2d 986 (Ala.Cr.App.).
We hold the supplemental charge was not threatening or coercive in any sense of the word. The only possible objectionable statement contained in the charge is the reference made to the fact that this was the second time that this case had been tried. However, no timely objection was raised thereto, and hence nothing is preserved for review.Garner v. State, 364 So.2d 406 (Ala.Cr.App. 1978), writ denied,Ex parte Garner, 364 So.2d 411 (Ala. 1978). No error was committed when the trial court failed to restate the burden of proof imposed upon the State at the giving of the "Allen" charge since the trial judge, immediately prior to the jury's deliberations, instructed the jury in strong terms the elements of self-defense and the State's burden to prove beyond a reasonable doubt that the appellant was at fault in provoking the difficulty.
We have carefully searched the record for errors injuriously affecting the substantial *Page 670 
rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.