The Court granted certiorari in this case in order to determine whether the evidence seized pursuant to a search of a farm where Richard Maddox, Vickie Callahan, and Gary Gillum resided should be suppressed because law enforcement officials allegedly violated their Fourth Amendment rights, and to determine whether Maddox's subsequent sentence violated his Eighth Amendment rights. We affirm in part, and remand with directions.
On December 2, 1982, Maddox was found guilty of trafficking in cannabis by a Coosa County jury and sentenced to a term of 15 years in the penitentiary. On November 18, 1983, Callahan pleaded guilty to felony possession of marijuana and was sentenced to three years' imprisonment. On the same day, Gillum pleaded guilty to trafficking in cannabis and was sentenced to four years' imprisonment. In a supplemental plea agreement, the State, with apparent concurrence of the trial court, agreed that Callahan and Gillum retained the right to appeal the legality of the search which led to the obtaining of evidence against the petitioners. The appeals of the three petitioners were consolidated by the Court of Criminal Appeals.
On June 9, 1982, Officer David Windsor, an investigator with the Coosa County Sheriff's Department, received information that marijuana was being grown on premises subsequently determined to be occupied by Maddox, Callahan, and Gillum. Based upon this information, Officer Windsor and Coosa County Deputy Sheriff Terry Browning proceeded to the property.
Officers Windsor and Browning approached the property from a dirt road south of the property and observed what Officer Windsor described as a "normal farmhouse scene." Officer Windsor testified that he observed a dwelling house, shed, garage, and chicken house, all grouped in the same general area. The chicken house was located 15 to 20 feet from the dwelling. Attached to the east side of the chicken house was a greenhouse-type *Page 788 
structure "covered with corrugated fiberglass." The two officers observed this scene from a wooded area south of the buildings and beyond an "old fence" which encircled the property. Officer Windsor testified that the fence was approximately 200 to 300 feet south of the buildings; however, J.M. Keel, a land surveyor, testified that the fence was 400 to 425 feet from the greenhouse.
After observing the general area, Officers Windsor and Browning then walked along the "edge of the woods" in a westerly direction to a position due south of the greenhouse. In order to get a better view, Officer Windsor then crossed the fence and concealed himself in some bushes along the edge of a pond which was on the property. With the aid of binoculars, Officer Windsor observed a "couple of small plants," which he recognized as marijuana, growing outside the greenhouse doors.
Officer Windsor then moved closer and hid behind a pickup truck parked in front of the greenhouse. He observed two more marijuana plants growing outside the greenhouse. The greenhouse had two large doors, which were open; however, a plastic partition with large slits hung at the opening. Officer Windsor could see into the greenhouse and observed more marijuana plants. The two officers then left and obtained a search warrant based on Officer Windsor's observations.
On June 10, 1982, Officer Windsor and five other law enforcement personnel returned to the property to execute the search warrant. The warrant was directed to Gillum as owner of the property. His ownership was indicated by the county tax assessor's records. Maddox, Callahan, and Gillum were found in the greenhouse.
During a search of the dwelling house, marijuana was found in several rooms, including the three bedrooms. The appellants accompanied the officers during the search, and Officer Windsor testified that Maddox identified one of the bedrooms as being his. The two other bedrooms were identified as belonging to Callahan and Gillum. Maddox also claimed ownership of some "cash money" which was found in the room identified as his.
The petitioners contend that Officer Windsor's intrusion into the curtilage of their residence was a violation of their Fourth Amendment rights, and, therefore, that the search warrant was improperly issued and all evidence resulting from the search should be suppressed.
The Court of Criminal Appeals, 502 So.2d 779, determined that Officer Windsor intruded upon the curtilage of the residence of the petitioners without a warrant in violation of the Fourth Amendment protection against unreasonable searches. However, that court held that the search warrant itself was not invalidated by the fact that the information was illegally obtained, because the tainted information was not included in the warrant affidavit.
The Fourth Amendment to the United States Constitution and Article I, § 5, of the Alabama Constitution protect people from unreasonable searches and seizures of their persons, houses, papers, and possessions. This protection applies to the area immediately surrounding one's home, often referred to as the curtilage. Oliver v. United States, 466 U.S. 170,104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); Whistenant v. State, 50 Ala. App. 182, 278 So.2d 183, cert. denied, 291 Ala. 802, 278 So.2d 198,cert. denied, 414 U.S. 1066, 94 S.Ct. 573, 38 L.Ed.2d 470
(1973).
Officer Windsor could legitimately search the open fields surrounding the petitioners' property without violating any Fourth Amendment rights. Moylan, The Plain View Doctrine, 26 Mercer L.Rev. 1047, 1097 (1975); Skipper v. State,387 So.2d 261 (Ala.Crim.App.), cert. denied, 387 So.2d 268 (Ala. 1980). When Officer Windsor positioned himself near the pond and spotted two marijuana plants growing outside the greenhouse, he was not violating Fourth Amendment rights, as he was not within the curtilage.
The Fourth Amendment protection applies to buildings within the curtilage. Whistenant v. State, supra. The evidence *Page 789 
adduced at trial established that the greenhouse was within the curtilage. We agree with the Court of Criminal Appeals that when Officer Windsor entered the curtilage without a warrant he was violating the petitioners' Fourth Amendment rights. We must now determine whether this violation invalidated the search warrant.
The warrant affidavit states in pertinent part:
 "Before me Robert J. Teel, Jr., a district court judge, personally appeared David E. Windsor, a law enforcement officer, who being duly sworn deposes and says that on this the 9th day of June, 1982, he has personally seen in plain view and within the last twenty-four hours and has probable cause to believe and does believe that there is now being cultivated marijuana plants . . . upon the premises of, to-wit: Gary Dean Gillum. . . ."
"The ultimate inquiry on a motion to suppress evidence seized pursuant to a warrant is not whether the underlying affidavit contains allegations based on illegally obtained evidence, but whether, putting aside all tainted allegations, the independent and lawful information stated in the affidavit suffices to show probable cause." United States v. Giordano, 416 U.S. 505, 555,94 S.Ct. 1820, 1845, 40 L.Ed.2d 341 (1974) (Powell, J., concurring in part and dissenting in part). This rule has been upheld by a number of federal courts of appeals. See, e.g.,United States v. Romero, 585 F.2d 391 (9th Cir. 1978), cert.denied, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d (1979); UnitedStates v. DiMuro, 540 F.2d 503 (1st Cir. 1976), cert. denied,429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); UnitedStates v. Watts, 176 U.S. App.D.C. 314, 540 F.2d 1093 (D.C. Cir. 1976).
Even given the illegality of Officer Windsor's intrusion into the curtilage, the warrant is valid if the underlying affidavit contains enough information independently obtained to establish probable cause. See United States v. Adames, 485 F. Supp. 965
(E.D.N.Y. 1980), affirmed, 652 F.2d 55 (2nd Cir. 1981).
Applying the above rule to the underlying affidavit in this case, we find that the affidavit contains sufficient information, independent of information related to the search within the curtilage, to enable the magistrate to find probable cause. Officer Windsor testified that he observed, from a position outside the curtilage, two marijuana plants growing outside the greenhouse. This information in itself was sufficient to establish probable cause.
Bearing in mind the limited standard of proof necessary for a showing of probable cause, we affirm the judgment of the Court of Criminal Appeals insofar as it held that the search warrant was not invalidated by the illegally obtained information and thus that the evidence seized was properly admitted into evidence at trial.
Maddox also contends in this Court, as he did below, that the trial court abused its discretion in sentencing him to fifteen years' imprisonment, while sentencing Callahan and Gillum to three and four years' imprisonment, respectively.
The appellate courts of this state are generally prohibited from reviewing the propriety of a sentence which is within the statutorily prescribed limits, as is Maddox's sentence.Brown v. State, 392 So.2d 1248 (Ala.Crim.App. 1980), cert.denied, 392 So.2d 1266 (Ala. 1981); Code of 1975, § 20-2-80. However, the appellate courts may review a sentence, which, although within the prescribed limitations, is so disproportionate to the offense charged that it constitutes a violation of a defendant's Eighth Amendment rights. Ex parteHarbor, 465 So.2d 460, 461 (Ala. 1985) (Faulkner, J., dissenting).
The United States Supreme Court in Solem v. Helm,463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), recognized that reviewing courts should grant substantial deference to the authority of legislatures in determining the kinds and limits of punishment for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. Yet, the sentence should be proportionate to the crime. In making a *Page 790 
proportionality determination, a court should be guided by objective criteria, including:
 "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem v. Helm, 463 U.S. at 290-91, 103 S.Ct. at 3010.
Maddox received the maximum sentence allowed by law for his first felony conviction, while Gillum and Callahan received a four-year sentence and a three-year sentence, respectively. The potential excessiveness of Maddox's sentence requires a review pursuant to the Eighth Amendment. Because the Court of Criminal Appeals did not address this issue, we must remand this cause to that court with directions to consider this case in light ofSolem v. Helm, supra. It is so ordered.
AFFIRMED IN PART AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.