[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1069 
T.M. Donahoo was convicted of trafficking in cannabis, sentenced to twenty years' imprisonment, and fined $25,000. He raises seven issues on appeal.
 I
On June 27, 1985, Talladega County law enforcement authorities spotted, by means of aerial surveillance, a field of growing marijuana approximately one-half mile from County Road 58. Officers subsequently cut down and confiscated over 2000 plants. The State's evidence established that the property on which the marijuana was growing was owned by the defendant's mother, whose land adjoined his. The defendant's residence was located over one-half mile from the marijuana patch and on the opposite side of County Road 58. The defendant argues that, since the marijuana plot was not located on property which he owned or over which he exercised exclusive control, the State failed to prove that he knew of the presence of the marijuana. *Page 1070 
Proof of knowledge by the accused of the presence of the controlled substance is an essential element to conviction for the offense of trafficking. Ala. Code (1975), § 20-2-80;Calhoun v. State, 460 So.2d 268, 270 (Ala.Cr.App. 1984). See also Walker v. State, 356 So.2d 672 (Ala. 1977). Section20-2-80(1) states, in pertinent part, that "[a]ny person . . . who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of cannabis is guilty of a felony, which felony shall be known as 'trafficking in cannabis.' " Guilty knowledge is invariably proved by circumstantial evidence. Calhoun v. State, supra, at 270;Temple v. State, 366 So.2d 740, 741 (Ala.Cr.App. 1978). See also Walker v. State, 356 So.2d 674, 675 (Ala.Cr.App. 1977), cert. denied, 356 So.2d 677 (Ala. 1978). It may be proved by evidence of acts, or conduct of the accused, from which it may be fairly inferred that he knew of the existence of the contraband at the place where it was found. Temple v. State, supra, at 741, Walker v. State, supra, at 676.
An inference of constructive possession arises when the controlled substance is found on premises owned or controlled
by the accused. Williams v. State, 340 So.2d 1144, 1145
(Ala.Cr.App. 1976), cert. denied, 340 So.2d 1149 (Ala. 1977). Possession is shown by three attributes: (1) actual or potential control; (2) intention to exercise dominion; and (3) external manifestations of intent and control. Radke v. State,52 Ala. App. 397, 398, 293 So.2d 312, 313 (1973), affirmed,292 Ala. 290, 293 So.2d 314 (1974). Although the evidence in the present case established that the defendant's mother owned the property on which the contraband was found, it also proved convincingly that the defendant controlled the property where the marijuana was growing.
The following evidence presented by the State established the defendant's actual control over the property where the marijuana was found, and thereby his constructive possession of the controlled substance:
(1) When the marijuana patch was discovered by Talladega authorities, the soil was wet, soft, and smooth. The roads leading across other portions of the property were dry and dusty and there had been no recent rainfall. The plot was equipped with a sprinkler system. Examination of the irrigation system revealed that three sprinkler heads standing in concrete-filled bases were attached to a three-inch underground PVC pipe fed by a 7 1/2 horsepower Berkley water pump, serial number 1144790, erected in a nearby lake. The lake, also located on the defendant's mother's property, was approximately one-half mile from the marijuana field. The water pump was operated by an electric switch, and was connected to an electric service meter.
(2) During the month of October 1984, the defendant rented a ditch digging machine for one day, and purchased 2000 feet of three-inch PVC water pipe, as well as pipe couplings, pipe joints, glue, and cleaner.
(3) In May of 1985, the defendant purchased 800 peat cups, 1000 pounds of potting soil, and 160 pounds of concrete-gravel mix from local farm supply and building materials companies. During April and May of 1985, he made a total of ten long-distance telephone calls to Russell Daniel Irrigation Company in Athens, Georgia. On May 22, 1985, he bought a 7 1/2 horsepower Berkley water pump, serial number 1144790, as well as an electric starter, ball valves, and various pipe fittings, from Russell Daniel Irrigation Company. He also received from that company a diagram illustrating the operation of a three-head sprinkler irrigation system.
(4) Another field, over which the defendant exercised undisputed control and from which the marijuana patch was visible, had been "disked" within a month to a month and one-half prior to June 27, 1985.
(5) Talladega Sheriff Jerry Studdard testified that, during the execution of the search warrant the defendant "said he knowed who turned his marijuana up — I mean I know who turned up ever whose marijuana that was. And, can't you make them take the stand and tell who turned it *Page 1071 
up. I [the Sheriff] said, 'T.M. you need to get you a lawyer is what you need.' He said, 'I don't need no damn lawyer, I ain't done nothing.' "
Based on the foregoing, it is clear that the State presented sufficient circumstantial evidence from which it could be fairly inferred that the defendant knew of the existence of the growing marijuana in the place where it was found. Temple v.State, supra.
 II
The trial court did not err in overruling the defendant's objection to A.B.I. agent Carter D. Waldon's testimony that, in his opinion, each marijuana plant had a market value of $500 to $600. Ringer v. State, 489 So.2d 646 (Ala.Cr.App. 1986). Waldon testified that he had been a narcotics investigator for fifteen years, had seen marijuana growing at all stages of development several thousand times, and had purchased marijuana in Talladega County more than twenty times within the past year.
 "It is unnecessary for a witness to be an expert or a dealer in a particular article in order to testify as to that article's value if he has had the opportunity to form a correct opinion as to its value. Sales v. State, 435 So.2d 242
(Ala.Crim.App. 1983); Lankford v. State, 396 So.2d 1099
(Ala.Crim.App. 1981). Whether a witness has had an opportunity to form a correct opinion as to the value of an article is a question for the trial judge, [whose decision] will not be disturbed on appeal, absent an abuse of discretion. Daniel v. State, 439 So.2d 206 (Ala.Crim.App. 1983), Tice v. State, 386 So.2d 1180 (Ala.Crim.App.), writ denied, 386 So.2d 1187 (Ala. 1980)."
Ringer v. State, 489 So.2d at 653. We find no abuse of discretion here.
The defendant also argues that Waldon's testimony was irrelevant to the issue of guilt or innocence and tended only to show the gravity of the offense, a matter relating solely to punishment and not within the province of the jury. The evidence was relevant, however, on the issue of motive. Testimony going to show motive, though motive is not an element of the burden of proof resting on the State, is always admissible. Mayberry v. State, 419 So.2d 262, 266 (Ala.Cr.App. 1982). "Where the proffered evidence has a tendency, even though slight, to enlighten the jury as to the culpability of the defendant, then it is relevant and properly admissible."Waters v. State, 357 So.2d 368, 371 (Ala.Cr.App.), cert. denied, Ex parte Waters, 357 So.2d 373 (Ala. 1978).
 III
A television news videotape of the marijuana field made by a photographer for WBTM-TV, Channel 13 in Birmingham, was admitted in evidence. The defendant objected on the grounds that the videotape was cumulative of the numerous still pictures of the scene, that it depicted an illegal demonstration (the operation of the sprinkler system), and that it had been edited.
Provided that a proper foundation is laid, the admissibility of videotape evidence in a criminal trial is a matter within the sound discretion of the trial judge. Annot., 60 A.L.R.3d 333 (1974). See Thompson v. State, 462 So.2d 777, 779-80
(Ala.Cr.App. 1984). The State established the proper foundation here, and there is no question regarding the authenticity of the videotape. The fact that the tape was cumulative to other photographic evidence is not a basis for reversal. Photographic evidence is admissible even though it may be cumulative or demonstrative of undisputed facts. Hopkins v. State,429 So.2d 1146, 1157 (Ala.Cr.App. 1983).
That the depiction of the sprinkler system in operation may have constituted a "demonstration" was also not a basis for exclusion of the videotape. Reviewing the trial court's disallowance of a demonstrative film, the Kansas Supreme Court characterized a videotape as "similar to a proffered demonstration or a request to view the scene of the crime" and concluded that the matter was addressed to the discretion of the trial court, to be reviewed only for *Page 1072 
abuse of discretion. State v. Costa, 228 Kan. 308,613 P.2d 1359, 1368 (1980). In light of the fact that there was other testimony regarding the sprinkler system, we do not find that the videotape's depiction of the system in operation "materially prejudiced" the defense here, see Pease Co. v.Local Union 1787, 59 Ohio App.2d 238, 393 N.E.2d 504 (1978), or that the admission of the videotape constituted an abuse of discretion.
Finally, the fact that the tape was edited did not render it inadmissible, but only affected the weight that it would be given by the jury. State v. Woolridge, 2 Kan. App. 2d 449,581 P.2d 403 (1978) (edited TV news videotape); Pease Co. v. LocalUnion 1787, supra (same).
 IV
The State introduced, without objection, records of Coosa Valley Electric Cooperative, the company which supplied power to the water pump for the sprinkler system, showing no change in the pump meter reading from December 1984 through June 1985. Next, the State introduced power company records, over the defendant's objection that they were irrelevant, showing that the defendant's residential power meter registered less in January 1985 than it had in December 1984. The State responded to the objection by stating, "We will tie it up, Your Honor." The court replied, "I'll let you go ahead assuming you will tie it up."
Then, in closing argument, over objection that the State was arguing from facts not in evidence, the State implied that the defendant had tampered with both meters in order to make them "run backwards."
When the admissibility of a particular item of evidence hinges upon proof of other facts, the court may, in its discretion, allow the evidence upon the proponent's promise to "connect it up." C. Gamble, McElroy's Alabama Evidence § 13.01 (3d ed. 1977). If the promised proof is not later presented, however, the party objecting to the introduction of the evidence should move for its exclusion. Henry v. Frohlichstein,149 Ala. 330, 43 So. 126 (1907); E. Cleary, McCormick onEvidence § 58 (2d ed. 1972). Here, the defendant did not hold the State to its promise to "tie up" the evidence by later moving to exclude the testimony, and his objection to the State's closing argument was, therefore, properly overruled. The ground of objection, that the State was arguing from facts not in evidence, was invalid. The conditionally-admitted evidence went unchallenged by the defendant at any subsequent time in the trial, even during the following cross-examination of the defendant by the State:
 "Q. [By District Attorney] How do you get electricity without making the meter go forward?
 "A. [By Defendant] I don't know nothing about a meter.
 "Q. Can't you just take this meter right here when it is sitting in like this and turn it upside down and then put it in and the meter will run backwards?
"A. I don't have any idea.
 "Q. Can you tell me how your meter ran backwards on your mobile home in December and January of '84 and '85?
 "A. To my knowledge, my meter hasn't run back. Have you got anybody that can prove that?"
The prosecutor has the right to present his impressions from the evidence. He may argue every matter of legitimate inference and may examine, collate, sift, and treat the evidence in his own way. Hayes v. State, 395 So.2d 127, 149 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 150 (Ala. 1981); McQueen v. State,355 So.2d 407, 411 (Ala.Cr.App. 1978). The fact that the marijuana field was wet, soft, and smooth when discovered leads to the legitimate inference that it had been irrigated by means of the sprinkler system fed by the water pump. That the pump meter reading had not changed in six months was a suspicious circumstance which, when taken together with the suspicious fact that the defendant's residential meter read less in one month than it had in the previous month, authorized the prosecutor's inference that the defendant had tampered with both meters. "Liberal rules are allowed *Page 1073 
counsel in drawing inferences from the evidence in their argument to the jury, whether they are truly drawn or not."Liner v. State, 350 So.2d 760, 763 (Ala.Cr.App. 1977). Here the inferences drawn by the State were legitimate ones supported by the evidence. Sanders v. State, 423 So.2d 348, 352 (Ala.Cr.App. 1982).
 V
The defendant also objected to the following portion of the State's closing argument:
 "MR. RUMSEY: If you go to the trouble of clearing all of this out and make it smooth as this floor and put irrigation in, you don't go up in there — you ladies and gentlemen know what these plants were for. When they were cut down and harvested last year —
"MR. WOOD: Your honor, I object to that.
 "MR. KING: Reasonable inference from the evidence, Your Honor.
"THE COURT: Overrule."
The objection was properly overruled, if for no other reason, because there were no grounds stated. Brown v. State,393 So.2d 513 (Ala.Cr.App. 1981). In addition, the argument was a legitimate inference drawn from evidence that at the edges of the cultivated marijuana patch, which contained taller plants, there were numerous plants two to three inches tall. The deputies pulled them up but did not count them because "it was like clover." (R. 137) Hayes, supra, Liner, supra, Sanders, supra.
 VI
The defendant argues that his twenty-year sentence is in excess of that authorized by law. He claims that under sections13A-5-1(b) and 13A-5-4, as well as Motley v. State,409 So.2d 945 (Ala.Cr.App. 1981), he should have been sentenced to no more than ten years, the maximum for a Class C felony under Title 13A.
Alternatively, he argues that by virtue of Maddox v. State,502 So.2d 786 (Ala. 1986), the maximum sentence for trafficking in cannabis is fifteen years. He also claims that his sentence violates the Eighth Amendment proscription against cruel and unusual punishment as interpreted in Solem v. Helm,463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
"[D]rug offenses fall outside the scope of Title 13A and provide for their own special penalties." Dickerson v. State,414 So.2d 998, 1005 (Ala.Cr.App. 1982). Sections 13A-5-1(b) and13A-5-4 are applicable to drug offenses only "for enhancement purposes under Alabama's Habitual Felony Offender Act." Motleyv. State, 409 So.2d 945, 947 (Ala.Cr.App. 1981).
In Ex parte Robinson, 474 So.2d 685 (Ala. 1985), the accused was convicted of trafficking in illegal drugs and sentenced to fifteen years. The Alabama Supreme Court directly addressed the issue of the maximum sentence allowed under § 20-2-80, and concluded that the statute was not unconstitutional for failing"to fix the maximum penalty which may be imposed." The court stated: "While § 20-2-80 provides for only a minimum term of imprisonment, the statute may reasonably be construed to validly authorize a maximum sentence of life imprisonment." 474 So.2d at 686.
In Ex parte Maddox, supra, the accused was convicted of trafficking in cannabis and also sentenced to fifteen years. We are unable to reconcile the specific holding of Robinson with the following statement, made with no citation of authority, inEx parte Maddox, supra: "Maddox received the maximum sentence allowed by law for his first felony conviction, while Gillum and Callahan [co-defendants] received a four-year sentence and a three-year sentence, respectively." We can only conclude that the Supreme Court had in mind the maximum sentence allowed under § 20-2-70 ("upon conviction for the first offense [ordinary possession] may be imprisoned for not less than two nor more than 15 years") and did not intend to depart from the clear holding of Robinson, supra, that the statute is constitutional despite its failure to provide a maximum punishment. See Maddox v. State, 502 So.2d 790 (Ala.Cr.App. *Page 1074 
1986) (on remand from Alabama Supreme Court).
Finally, the proportionality analysis of Solem v. Helm, supra, is not mandated here. See Maddox v. State, 502 So.2d 790
(Ala.Cr.App. 1986) (on remand), wherein this court determined that Solem v. Helm is inapplicable to sentences for trafficking under § 20-2-80 unless the sentence imposed is life without parole. The defendant possessed over 2000 marijuana plants, weighing 16.8 pounds. Compare Beasley v. State, 408 So.2d 173
(Ala.Cr.App. 1981), cert. denied, Ex parte Beasley,408 So.2d 180 (Ala. 1982) (accused, convicted of trafficking in cannabis, possessed 2.4 pounds, and was sentenced to twenty years and one day). The careful planning, investment of time, and expense which attended the defendant's cultivation and irrigation of the marijuana crop are indicators of the gravity of his offense, suggesting, as they do, his intent to reap the reward of his crop on a continuing basis. His sentence was not disproportionate to his crime and thus was within constitutional limits. Maddox v. State, supra.
 VII
The defendant's motion for a new trial included the following grounds:
 "6. That, during and in the course of the deliberations of the jury in this case, the jury propounded one or more questions in writing to the Honorable Trial Court; that the Honorable Trial Court, without notice to the Defendant or an opportunity for the Defendant to be heard concerning same, responded to said question or questions propounded in writing by the jury, or members thereof; that said action by the Honorable Trial Court was erroneous and prejudicial to the substantial rights of the Defendant.
 "7. That the Honorable Trial Court erred in responding to the above described written questions from the jury, by failing to respond to the same in open Court in the presence of the Defendant and his attorney."
Attached to the motion was the sworn affidavit of Debbie D. Davis, a juror who served on the case, stating the following:
 "My name is Debbie D. Davis and I live at Rt. 6 Box 279 Talladega, Alabama. I served on the Jury in the trial of State of Alabama vs. T.M. Donahoo in October or November 1985 in Judge Fielding's Courtroom. On the last day of the trial, which was a Wednesday I believe, we, the jury, heard the lawyer's closing arguments and then Judge Fielding gave his statement about the law in the case and told us we could begin our deliberations. We went to the Jury room and prepared to begin deliberating. We waited until the exhibits (small exhibits) were brought to us by the bailiff. After the bailiff left and the door was closed the jurors began discussing the case. After a little while, the jurors among themselves decided to ask for a question to be answered by Judge Fielding. After that a question was written on a piece of paper and was then read aloud. To the best of my memory the question asked that Judge Fielding give further information about whether the jury was responsible for setting a fine in the verdict. Then the man who served as Jury foreman knocked on the door and the bailiff opened the door. The bailiff took possession of the note and closed the door. The bailiff returned shortly and returned the note to the Jury room. The foreman then read the answer aloud and placed the note on the table. To the best of my memory, the answer to the question was basically that the jurors were to determine guilt or innocence and that the Court will determine the punishment in this case."
Defense counsel also filed a sworn affidavit stating that Jon Adams, the bailiff, informed him that the court had replied in writing to a question asked by the jury after they had begun their deliberations. Defense counsel averred that both he and his client remained in the courtroom during the deliberations of the jury, were available to be called to the courtroom if necessary, but were not informed that the jury had asked a question or that the trial judge had *Page 1075 
replied to a question. He further averred that he had requested a hearing on his motion for new trial but that a hearing was never held, that he had requested the consent of the district attorney to an extension of time for ruling on the motion so that a hearing could be held, but that consent was not given, and that the motion was deemed denied 60 days after it was filed. Rule 13(d), Ala.R.Crim.P.Temp.
In Montgomery v. State, 42 Ala. App. 345, 164 So.2d 717
(1964), a case directly on point, the court ruled that the trial judge's giving additional instructions to the jury out of the presence and hearing of the defendant constituted reversible error. The jury in Montgomery inquired whether there were any limitations on the punishment they could impose for possession of marijuana. The court replied, outside the presence of the defendant, that the jury was not to fix punishment, but only to determine guilt or innocence.
"[T]he continuous presence of the defendant from arraignment to sentence is an essential part of the process provided for the trial of the defendant and without which the court has no jurisdiction to pronounce judgment against him." Neal v. State,257 Ala. 496, 497, 59 So.2d 797, 798 (1952). See also Thomas v.State, 399 So.2d 915, 923 (Ala.Cr.App. 1981); Graves v. State,377 So.2d 1129 (Ala.Cr.App.), cert. denied, 377 So.2d 1130
(Ala. 1979). "No communication whatever, should take place between the judge and the jury after the cause has been submitted to them, unless in open court with all the parties and their attorneys present." Donahoo v. State, 371 So.2d 75,78-79 (Ala.Cr.App.), cert. denied, 371 So.2d 79 (Ala. 1979).
Although there is nothing in the trial transcript here to indicate that improper communication with the jury occurred, see Daniels v. State, 416 So.2d 760, 762 (Ala.Cr.App. 1982), the defendant did not rely on unverified assertions in his motion for new trial, but attached sworn affidavits as evidence of the facts alleged. Cf. Daniels, 416 So.2d at 762. Under the circumstances, he is entitled to an evidentiary hearing to determine the truth of his allegations. The trial court is directed to conduct a hearing to determine whether the improper jury communication did occur, and if so, to grant the defendant's motion for a new trial.
REMANDED WITH DIRECTIONS.*
All Judges concur.
* Reporter's note: On remand the trial court granted a new trial; on return following remand, the Court of Criminal Appeals dismissed the appeal.