627 So.2d 1116 (1993)
Robert Donald SMITHERMAN
v.
STATE.
CR-91-1463.
Court of Criminal Appeals of Alabama.
May 7, 1993.
Rehearing Denied June 18, 1993.
Certiorari Denied September 3, 1993.
*1118 Benjamin Pool, Montgomery, for appellant.
James H. Evans, Atty. Gen., and Robert Ward, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1921503.
MONTIEL, Judge.
The appellant, Robert Donald Smitherman, was indicted by a Montgomery County grand jury and was charged with murder in violation of § 13A-6-2 Alabama Code 1975. After a jury trial, the appellant was found guilty of the charged offense. A sentencing hearing was held on June 17, 1992, at which time, the trial court sentenced the appellant to life in prison and ordered the appellant to pay restitution, court costs and $100 to the Victims' Compensation Fund. The appellant filed a timely notice of appeal.
The appellant's trial and conviction resulted from the circumstances surrounding the shooting death of a patron at Jimmy's Lounge during the early morning hours of January 6, 1992. According to the testimony presented at trial, the victim and the appellant's brother were arguing over a bet on a pool game. A fight ensued, and the appellant pulled out a handgun. When the patrons in the lounge saw the gun, they left. Shortly thereafter, a gun shot was heard by several patrons who were outside the lounge. The victim was shot at close range on the left side of the back of the head, and died from the bullet wound. A knife was found in the victim's hands, and the issue of self-defense was raised at trial by defense counsel. The appellant did not testify at the trial. Although the trial court instructed the jury on lesser included offenses, the jurors found the appellant guilty of murder.
The appellant raises several issues on appeal, each of which is addressed separately herein.

I
The appellant first raises the issue of whether the trial court erred to reversal in allowing an expert witness to testify as to his opinion, which was allegedly based upon facts not in evidence. The testimony elicited at trial is as follows:
"Q. Dr. Lauridson, the bodyassuming it was found in the corner, as we have previously talked about, holding a knife with the blade facing towards the victim and with his right hand grasping the knife on the handle with his left hand cupped around it, would you expect that if someoneif the victim were standing in an upright position with a knife in one hand, getting shot in the position we've talked about, would you expect him to be able to grasp, have motor function of his left arm to be able to grasp and cup his other hand?
"Mr. Pool: [defense counsel] Judge, we object. That hypothetical is clearly not based on facts in evidence.
"The Court: Overruled.
"A. No, it is impossible for him to have had any voluntary motion at all after having been shot in the spine.
"Q. Do you have an opinion as to whether, assuming the victim had been standing erect and was shot in the position that you have described with his handsboth hands on the knife, right hand cupped with the left-hand [sic], would you expect after receiving a paralyzing *1119 wound him to maintain that position until he fell to the ground and still have it held with both hands?
"Mr. Pool: Judge, we object because there is no testimony or evidence that [the victim] was clutching a knife with both hands. I don't know where those facts are coming from.
"Mr. Gibbs [prosecutor]: That's how the body was found.
"The Court: It came from Officer Killough.
"Mr. Pool: That prior to being shot he was clutching a knife with both hands?
"The Court: When he was found, he was clutching with both hands. Overrule your objection."
The law is well established that a hypothetical question asked of an expert must be based upon facts that are in evidence. Perkins v. State, 580 So.2d 4 (Ala. Crim.App.1990); Winton v. State, 563 So.2d 22 (Ala.Crim.App.1990). The facts upon which the opinion is based may also be reasonably inferred from the facts which are already in evidence. Winton, 563 So.2d at 25.
The trial court ruled that the facts upon which the opinion testimony was based came from the testimony of Officer Killough. A review of the record establishes that the officer, who testified before the expert did, stated that when the body was found the victim was holding the knife in his right hand with his left hand cupped over the knife. Clearly, the facts upon which the opinion testimony was based were in evidence. Therefore, we find the appellant's argument to be without merit.

II
The appellant next contends that certain statements made by the State during closing argument were grossly improper and highly prejudicial and establish grounds for a new trial. During closing arguments, the following transpired:
Mr. Gibbs: [Prosecutor] Remember one other piece of defendant's evidence, Miss Shevlin, when she came and testified? Who is the one person we know as a matter of scientific fact was not on drugs when he was murdered? [The victim]. He had alcohol and nothing else in his system that night. Why would she [Ms. Coggins[1]] say such a thing about him then? I would suggest to you one motive. You saw his family. You saw his sister testify. You heard from her, Ms. Coggins, on the stand. They [the victim's family] testified against her [Ms. Coggins] in front of the ADC [sic] [Alcohol Beverage Control] board and testified against her in front of the city council. They testified and cost her her liquor license. And she is out of business. And she is obviously not happy about it. Because she got up there, and if she could have thought of one more hateful thing to say about [the victim], I guarantee you she would have said it. She would have said anything to hurt them. And she admitted she didn't care what the facts were, she wouldn't change her opinion of that man over there that is charged with the murder of [the victim]. She was a hateful, spite-filled woman who was up here to get some of her own back against the family of [the victim] and [the victim].
"Mr. Pool: Your Honor, I take exception and object to Mr. Gibbs' statement regarding Dr. Shevlin and testimony about drugs. Unless I'm badly mistaken, there was no such testimony period about drugs.
"Mr. Gibbs: She said she tested his blood and found alcohol and nothing else. The only thing she mentioned was alcohol.
"Mr. Pool: I don't think she mentioned anything about drugs.
"The Court: It is a little too late to be trying to put evidence in the case."
The State argues that because Shevlin made no mention of drugs being found in the victim's blood after testing, the comments were a reasonable inference from the facts. Counsel, in argument to the jury, may comment on all proper inferences from *1120 the evidence and may draw conclusions based on his own reasoning. Twilley v. State, 472 So.2d 1130, 1139 (Ala.Crim.App.1985). Further, the trial court has considerable discretion as to the propriety of arguments of counsel. Cannon v. State, 470 So.2d 1351, 1359 (Ala.Crim.App.1985). To reverse based on counsel's argument to the jury, this Court must conclude that substantial prejudice has resulted. Twilley, 472 So.2d at 1139 (citations omitted).
Here, the trial court admonished the assistant district attorney in front of the jury for his comments, thereby eradicating any alleged potential harmful effect. While this Court does not conclude the comments made by the assistant district attorney were necessarily reasonable inferences from the facts, we hold that the appellant was not substantially prejudiced by the comments, especially in light of the trial court's admonishment, and therefore, the appellant's argument is without merit.

III
The appellant also argues that the trial court erred to reversal in not allowing his counsel to question an officer with regard to the appellant's intoxication or sobriety on the night of the shooting. The alleged purpose of this testimony was to determine whether the appellant understood his Miranda rights when he was advised of them. The record reveals that defense counsel was allowed to cross-examine the officer about the appellant's sobriety at the time. The record clearly establishes that pertinent testimony as to the appellant's sobriety and comprehension was elicited from the officer. However, the trial court would not allow defense counsel to elicit testimony from the officer regarding a statement made to the officer by the appellant because it was hearsay and did not come within any exception to the hearsay rule. As previously noted, the appellant did not testify at trial. This Court has held that declarations of the accused, in his favor, made after the crime was committed and which are not part of the res gestae, are clearly hearsay. Harrell v. State, 470 So.2d 1303, 1306 (Ala.Crim.App.1984) aff'd, Ex parte Harrell, 470 So.2d 1309 (Ala.1985), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). We hold that the trial court did not err in prohibiting defense counsel from eliciting such a statement.

IV
The appellant next argues that the trial court committed reversible error in not allowing defense counsel to introduce a written statement given by the appellant to a detective or in permitting the detective to testify as to what the appellant stated to the detective several hours after the shooting occurred. The State timely objected to the introduction of the statement on the ground that it was hearsay. The appellant asserts that the statement comes within certain exceptions to the hearsay rule. Specifically, the appellant argues that the statement was not offered to prove the truth of the matter asserted, but that it was offered to show the appellant's motive, intent, or state of mind at the time of the shooting, or that it was offered as an admission of the appellant.
The trial court sustained the State's objection to the admissibility of the appellant's statement and we find no error in the trial court's ruling. This Court has held that self-serving statements of an accused made before or after the offense are not admissible for him or by him unless they are part of the res gestae or are introduced by the State. Harrell, 470 So.2d at 1306; Chisolm v. State, 409 So.3d 930, 932 (Ala.Crim.App.1981). "[S]tatements made by the accused, after the commission of the crime and not as part of the res gestae, fit the classic definition of hearsay." Harrell at 1306 (citing C. Gamble, McElroy's Alabama Evidence §§ 242.01, 242.02 (3d ed. 1977)).
The record indicates that the statement of the appellant was made several hours after the appellant allegedly committed the offense. Because the statement was made by the appellant so long after the offense was committed, it was not part of the res gestae. Further, it was not offered by the State, and there was no showing that the appellant was offering the statement against his interest. Therefore, the trial court did not err in prohibiting the introduction of the statement *1121 into evidence. See Miller v. State, 441 So.2d 1038, 1039 (Ala.Crim.App.1983).

V
The appellant next contests the prosecution's attempt to impeach a witness who testified on behalf of the defense by evidence of a prior inconsistent statement. The trial court overruled the appellant's objections made on the ground that the prosecution failed to lay a proper predicate. The appellant claims that the trial court's decision was error requiring reversal. We find the appellant's argument to be without merit.
To impeach a witness by evidence of a prior inconsistent statement, the party seeking to impeach must lay a proper predicate by establishing that the witness made the prior statement, including establishing with reasonable certainty, when the statement was made, where the statement was made, and to whom the statement was made. Gamble, McElroy's Alabama Evidence § 157.01(1) (4th ed. 1991).
The prosecution was clearly attempting to impeach the defense's witness by introducing evidence of a statement given to the investigating officials on the night of the shooting. A careful review of the record establishes that before the attempt at impeachment, the prosecution laid a proper predicate. The prosecution asked the witness if he gave a statement to the police on the night of the shooting and the witness replied that he had. After the proper predicate had been laid, cross-examination with regard to the statement offered for impeachment to the witness's trial testimony was permissible. Id.

VI
The appellant asserts that the trial court erred to reversal by allowing into evidence a photograph of the victim and the crime scene after the shooting, claiming that the photograph was of no probative value and that it was highly inflammatory. We find appellant's argument unpersuasive.
First, we note that the admission of photographic evidence lies within the sound discretion of the trial court. Ex parte Siebert, 555 So.2d 780, 783 (Ala.1989) (citing Fletcher v. State, 291 Ala. 67, 277 So.2d 882, 883 (1973); Donahoo v. State, 505 So.2d 1067, 1071 (Ala.Crim.App.1986)). Second, as long as a proper foundation is laid, a photograph is admissible if it tends to shed light on, to strengthen, or to illustrate testimony. Id. Here, the appellant does not contend that the State failed to lay a proper foundation.
The Alabama Supreme Court has held that photographs depicting crime scenes and a deceased victim's external wounds, even if inflammatory or cumulative, are admissible. Id. at 783-84. Clearly, because the location of the victim, the defendant and the eyewitnesses at the time of the shooting, and the trajectory of the bullet that caused the wound were all in issue in this case, we hold that the trial court did not err in admitting the photograph into evidence.

VII
The appellant's last assertion is that he is entitled to a new trial because, he says, the trial court failed to inquire whether the jurors read, saw, or heard news accounts of the trial, although the trial court had properly instructed the jury not to read the newspapers or watch television news broadcasts relating to the trial.
At the conclusion of the first day of trial, the trial court properly instructed the jury not to watch the evening news or to read the morning newspapers because the trial would most likely be the subject of a news report. The trial court did not give that instruction again. Two days after the trial had begun, but during a recess, a local newspaper published an article about the appellant's brother and the appellant's trial. When the jury returned the following day, defense counsel did not alert the trial court to the publication of the article or any possible prejudice to the defendant as a result of the article. The trial court did not ask the jurors whether any of them had read the article.
This Court has held that jurors, while discharging their duties, should not be permitted to read newspaper articles pertaining to the trial that are calculated to affect the jury's verdict. Wiggins v. State, 429 So.2d 666, 668 (Ala.Crim.App.1983). Although an article about this trial had been published in the local newspaper, the appellant *1122 failed to present any evidence that any juror even saw the article or that any juror disobeyed the trial court's instructions that the jurors refrain from obtaining information about the case from the news media. As a result, it was not necessary for the trial court to question the jurors about the newspaper article.
Moreover, assuming arguendo, that the jurors had read a newspaper article about the trial, the appellant would not automatically be entitled to a new trial. The appellant must show that he was prejudiced, i.e., that the jury's verdict was affected by the article. See Smith v. State, 588 So.2d 561, 579 (Ala.Crim.App.1991). Because there has been no showing that any juror even saw the newspaper article and there could, therefore, be no showing that the jury's verdict was affected, we find no error in the trial court's refusal to grant a new trial.
AFFIRMED.
All the Judges concur.
TAYLOR, J., concurs specially with opinion.
TAYLOR, Judge, concurring in the result.
I concur with the majority in its result in Part II of this opinion. However, by no stretch of the imagination can the comment by the trial court in response to the prosecutor's remarks be called curative.
NOTES
[1] Ms. Coggins was the owner of Jimmy's Lounge.