[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 994 
 ON RETURN TO REMAND
The appellant, Walter Lee Burrell, was indicted for capital murder for the killing of two people as a result of one course of conduct, see § 13A-5-40(a)(10), Code of Alabama (1975). A jury found Burrell guilty as charged. The trial court followed the jury's recommendation and sentenced Burrell to life in prison without parole.
The evidence adduced at trial tended to show the following. Burrell and one of the victims in this case, Myra Jean Brown, had been having an on-again, off-again relationship for more than a year before the murders. Brown's sister, Marie Bennett, testified that about a week before the December 25, 1991, murders, Brown left Burrell and moved in with their mother, Ella Mae Brand. Bennett testified that on December 24, she and other family members went to a friend's house for drinks and that Brown, Brand, and two of Brown's nephews stayed home. In the early morning hours of December 25, Bennett and the other family members returned home and discovered the bodies of her mother and sister. She said the house was completely dark and that when she tried to call for help, the telephone was not working. She said she later learned that the wires had been cut outside the house.
One of the nephews, Mark, who was eight-years-old, was shot in the leg that night. Mark testified that he was awakened at about three o'clock in the morning by gunshots, that when he awoke he saw Burrell holding a gun, and that he saw fire coming from the gun as Burrell was shooting. He said that he saw his aunt, Myra Brown, trying to get out the front door. Mark testified that Burrell, who he knew as Toot, was saying, "Go get him now. Go get him now." He said he also heard his grandmother saying, "Stop, Toot. Stop, Toot." He said that he then took his little brother and ran into a bedroom and hid under the bed. At one point, he got on the bed. He said that he *Page 995 
then noticed that his leg was sore, and he saw that he was bleeding, and that he realized that he had been shot.
Burrell testified that he went to Brand's house early in the morning of December 25, in response to a telephone call from Brown a few days earlier. When he got to the house, Burrell testified, Brown let him in and the two of them sat on the couch and talked for about 25 minutes. He testified that during the conversation, she accused him of taking her children's Christmas toys. He said that he got aggravated and got up to leave. Burrell said he leaned over to pick up his keys, which had fallen to the floor, and that as he was straightening up, Brown began shooting at him. Burrell said he was shot three times, then he got his pistol out and returned fire. He claimed that he did not see Brand and that he did not intend to shoot her.
 I
On January 13, 1995, we remanded this cause to the circuit court because it appeared that the trial court's determination of whether, under Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a prima facie case of discrimination had been established where the claim was based solely on a comparison of the percentage of blacks on the jury to the percentage of blacks on the venire. On return to remand, the court has filed an order with this court. In its order, the court states:
 "While the court did consider that a greater percentage of blacks sat on the jury than were on the venire, other factors were also taken into account. The State used only 5 of its 13 strikes to remove black jurors. The Court also had benefit of voir dire consisting of over 165 pages of the record of trial in this case. Neither party appeared to ask questions designed to create a pretext for an improper strike."
A trial court's ruling on a Batson motion will be reversed only if this court determines that the ruling is clearly erroneous. Nance v. State, 598 So.2d 30, 31
(Ala.Crim.App. 1992); Jackson v. State, 594 So.2d 1289, 1294
(Ala.Crim.App. 1991). The trial court's order on remand clearly states that the court examined several factors that led it to conclude that the appellant had failed to establish a prima facie case. The trial court's determination that the appellant failed to establish a prima facie case was not clearly erroneous.
 II
The appellant contends that the trial court erred by failing to suppress certain items of evidence, specifically a gun and a wire cutter belonging to one of the victims. The appellant filed a motion to suppress the evidence before trial. In Exparte Rowell, 666 So.2d 823 (Ala. 1992), the Alabama Supreme Court held that a ruling on a pretrial motion to suppress is sufficient to preserve the issue for review, and that the appellant need not object to the evidence when it is admitted at trial. This issue is therefore properly preserved for our review.
The appellant argues that the chain of custody as to the gun was broken because, he says, a witness, Lee Brown, Brown's brother, admitted that he confiscated the gun, which was in his dead sister's hand when he arrived at the scene and discovered the bodies of his mother and sister. (R. 353.) Mr. Brown admitted that he removed the gun from his sister's grasp and that he placed it in his car. He further acknowledged that he had lied to the police about his knowledge of a gun when he was first questioned. (R. 358.) Mr. Brown testified that he checked the gun the next day to see if it had been fired; he found five empty shells in the gun. (R. 362.) He threw the empty shells out into a field beside his aunt's house. (R. 368.) Evidence revealed that the appellant suffered three gunshot wounds. (R. 19.) Approximately two weeks after the shooting, Mr. Brown gave the gun to another sister, who delivered it to the police. (R. 367-68.) At trial, Mr. Brown denied owning a wire cutter or a flashlight, which was found along with the wire cutter, or tampering with those particular items before they were photographed by the police. (R. 362, 371-73.)
Proper analysis of a chain of custody question, however, does not begin at the time of the offense; the chain of custody begins when item of evidence is seized by the *Page 996 
State. State v. Conrad, 241 Mont. 1, 785 P.2d 185 (1990); 29A Am.Jur.2d, Evidence § 947 (1994 ed.) ("The chain-of-custody rule does not require the prosecution to account for the possession of evidence before it comes into their hands.") Anyone who has handled evidence in the State's possession is a "link" in the chain of custody; once the evidence is in the State's possession, it is the State's duty to account for each link. § 12-21-13, Code of Alabama (1975). See, Ex parte Holton,590 So.2d 918, 920 (Ala. 1991). The jury must determine the weight to accord the evidence. Kennedy v. State, 690 So.2d 1222
(Ala. 1996).
In this case, Mr. Brown is not a link in the chain for which the State must account. He testified as to his particular actions regarding the gun, and it is the jury's task then to consider how those actions affected the item of evidence in question and how much weight to assign to that item. There is no evidence to contradict the assertion that this gun is Ms. Brown's gun, which was clearly marked with a serial number and which was registered to her. (R. 595.) The police ultimately received the gun and handled it as they did the rest of the evidence in this case. The appellant raises no issue regarding the State's handling of this or any other item of evidence.
The appellant, in his brief to this court, accuses the family of the victims of engaging in possible instances of tampering with evidence. However, these particular accusations — e.g., the moving of the victims' bodies and the kicking in of Brand's front door — were not discussed in the motion to suppress and thus are not preserved for review (C. 94-96, R. 29-30). The trial court properly admitted the item into evidence, and the record reveals no abuse of discretion regarding that decision.
 III
The appellant contends that the trial court erred by failing to give a charge on criminally negligent homicide as to Ms. Brand. The jury was given an instruction on manslaughter, but the jury convicted the appellant of the capital offense, an intentional murder.
 "As stated in Phelps [v. State, 435 So.2d 158
(Ala.Crim.App. 1983)], '[a]ny speculation that the jury might have found the defendant guilty of criminally negligent homicide is dissipated by the fact that they found him guilty of intentional murder.' The verdict would have been no different had the jury been charged on criminally negligent homicide. Jordan v. State, 486 So.2d 485 (Ala. 1986); Lofton v. State, 515 So.2d 137 (Ala.Crim.App. 1987); Jones v. State, 514 So.2d 1060
(Ala.Crim.App. 1987); A.R.A.P. 45."
Williams v. State, 518 So.2d 888, 889-90 (Ala.Crim.App. 1987). Therefore, this issue is without merit.
 IV
The appellant contends the trial court erred by denying his motion for a continuance to allow his attorney additional time to prepare for trial. However, the trial court never ruled on the motion, so the issue was not preserved for review. Although the issue was not preserved, we note that the court had appointed attorneys to represent the appellant initially, but the appellant retained another attorney several weeks before trial.
 "It is well settled law that a motion for continuance is addressed to the sound discretion of the trial court. McConico v. State, 458 So.2d 743 (Ala.Crim.App. 1984); Carroll v. State, 445 So.2d 952 (Ala.Crim.App. 1983). Absent a clear showing that it has abused its discretion, the trial court's decision will not be reversed on appeal. Dawkins v. State, 455 So.2d 220
(Ala.Crim.App. 1984); Owens v. State, 460 So.2d 305
(Ala.Crim.App. 1984). The record indicates that counsel for the appellant had approximately two weeks to prepare for trial. Such a length of time is not, as a matter of law, inadequate. Nance v. State, 416 So.2d 437 (Ala.Crim.App. 1982). Furthermore, it appears from the record that the appellant's attorney was well prepared and that the appellant was represented skillfully and ably at every phase of the proceedings. We find no abuse of the trial court's discretion in denying appellant's motion."
Hamilton v. State, 496 So.2d 100, 108 (Ala.Crim.App. 1986). The appellant's attorney in this case had more than three weeks to prepare for this trial. Even had this issue been *Page 997 
preserved, we cannot say the trial court abused its discretion. This motion was never ruled on by the trial court; therefore, this issue was not preserved for our review.
 V
The appellant contends the trial court erred by admitting into evidence a photograph of the body of one of the victims because, he says, the photograph was not a true and accurate depiction of the body. The appellant objected to its introduction because the coroner had altered the photograph by drawing a picture of a gun on the photograph. We have no indication as to why this was done.
 "First, we note that the admission of photographic evidence lies within the sound discretion of the trial court. Ex parte Siebert, 555 So.2d 780, 783 (Ala. 1989) (citing Fletcher v. State, 291 Ala. 67, 277 So.2d 882, 883 (1973); Donahoo v. State, 505 So.2d 1067, 1071
(Ala.Crim.App. 1986)). Second, as long as a proper foundation is laid, a photograph is admissible if it tends to shed light on, to strengthen, or to illustrate testimony."
Smitherman v. State, 627 So.2d 1116, 1121
(Ala.Crim.App. 1993). We find the trial court did not abuse its discretion in this instance.
 VI
The appellant cites a lengthy portion of the prosecution's closing argument and contends that it constitutes reversible error. When the prosecutor first started telling a story as part of his closing argument, the appellant stated, "I object to this argument."
 " Counsel failed to state his grounds for his objection. General grounds for objection do not preserve an issue for appeal. Whitley v. State, 607 So.2d 354 (Ala.Crim.App. 1992). This court will not consider an argument advanced for the first time on appeal. Watley v. State, 568 So.2d 852
(Ala.Crim.App. 1989), writ quashed, 568 So.2d 857
(Ala. 1990)."
Jenkins v. State, 640 So.2d 1053 (Ala.Crim.App. 1993). This issue was not preserved for our review.
 VII
The appellant contends that there was insufficient evidence to sustain the verdict.
 "When reviewing a claim that the evidence was not sufficient to support a conviction, this court must view the evidence in the light most favorable to the state and must accept as true the evidence presented by the state. Carson v. State, 610 So.2d 1251 (Ala.Crim.App. 1992). When the jury's verdict is supported by the evidence, this court's function is not to reweigh the evidence or substitute its judgment for that of the jury. Allen v. State, 611 So.2d 1152 (Ala.Crim.App. 1992)."
Gayle v. State, 616 So.2d 378, 380 (Ala.Crim.App. 1993). The State certainly presented sufficient evidence from which the jury could conclude that the appellant was guilty of the capital offense in this case. The judgment is affirmed.
AFFIRMED.
All the Judges concur.