In three indictments, Martin Jay Uber was charged with the offenses of 1) burglary in the first degree, in violation of § 13A-7-5, Code of Alabama 1975; 2) robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975; and 3) theft of property in the first degree, in violation of §13A-8-3, Code of Alabama 1975. The three cases were tried together, and the jury found Uber guilty of the three offenses as charged in the indictments. The court sentenced Uber as a habitual offender to three concurrent sentences of 25 years each in the state penitentiary.
The evidence at trial revealed the following: In the early morning hours of March 9, 1990, James and Lillian Tate were awakened by someone pointing a gun at them and shining a flashlight in their faces. The Tates realized that three armed men were in their home demanding money and weapons. Mr. Tate showed the men where he kept his pistols, and the men took the pistols and ammunition. After ransacking the Tate's house for at least an hour, the men positioned Mr. and Mrs. Tate back-to-back and strapped them in their bed with their hands tied. The men disconnected all the telephones in the house. Among the items stolen were three televisions, a stereo, a videocassette recorder, a tape recorder, a microwave oven, jewelry, two pistols, a rifle, and ammunition.
Before the men left the Tate's home, they asked Mr. Tate for the keys to his Cadillac and Ford Mustang automobiles, and Mr. Tate gave them the keys. The men then departed in the Cadillac after being unable to start the Ford Mustang.
After the men left the Tate's house, Mr. Tate was able to free himself and his wife, and he went to a grocery store and called the police. Approximately 15 minutes later, 3 police officers arrived at the Tate's home, and Mr. Tate described the men as 3 white males, 2 of whom had been wearing stockings over their heads while the third man had a bandanna tied around his face. Mr. Tate testified that he got a good look at only one of the assailants, the one that was close to him while he was unloading his pistol. Mr. Tate testified that he later identified this assailant at the preliminary hearing as Chris Jordan.
Officer Danny Gardner of the Mobile Police Department testified that while he was on duty around 1:30 a.m. on March 9, 1990, he received information over his radio concerning the description and license tag number of the vehicle stolen by the persons involved in the Tate burglary. Officer Gardner wrote the license number on the back of his hand. As Officer Gardner and his partner were headed east on Old Pascagoula Road, a dark green Cadillac driven by a white male with blond hair approached them. As the Cadillac passed to make a turn, Gardner noticed that the license number of the Cadillac matched the license number of the stolen car. Officer Gardner pursued the vehicle with his blue lights on, made a felony stop, and took the driver, who was later identified as Chris Jordan, into custody.
Jordan testified that prior to March 9, 1990, he went by the Tate's house in the company of his roommate, James Branum, and Branum's girlfriend, Tobi Lambeth, for the purpose of "casing" the house for a possible burglary. Jordan testified that Lambeth's parents lived next door to the Tates and that she knew the floor plan of the Tate house. Jordan testified that he looked in the windows of the Tate house a second time by himself. Jordan testified that on March 9, 1990, Branum and Lambeth dropped off Jordan, Uber, and Frank Knox at the Tate's home to consummate the burglary and robbery and that Jordan, Uber, and Knox had possession of Branum's rifle. Jordan testified that after he, Uber, and Knox robbed the Tate home, the three men fled in one of the Tate's cars and drove first to Jordan's home to unload the stolen items. Jordan then testified that he drove Uber and Knox to their house trailer and that Uber and Knox kept two of the pistols they had stolen from the Tates. Jordan was then apprehended by the police *Page 611 
and was placed under arrest and charged with the same crimes with which Uber was subsequently charged.
Officer Jimmy Mayo testified that on March 9, 1990, he went to a trailer park in his investigation of the Tate robbery. Mayo had been given a description of the individuals involved in the robbery, and based upon the information he had, he arrested Uber at the trailer park. Thereafter, Mayo patted Uber down for weapons and found a square object. Not knowing what the object was, Mayo retrieved it for his own personal safety and the safety of the other officers and found that the object was a key case containing several new car keys. Mayo turned the keys over to Lt. Farmer and stated that he did not want Uber to keep the keys because they could be used as a weapon. Farmer kept the keys in his possession and when the Tate's stolen car was recovered, he found that the keys fit the car's ignition and trunk.
Mayo also asked for the female owner's consent to search the trailer and the grounds around the trailer for weapons or property taken from the robbery victims. Officer David Smith testified that he checked the area outside the trailer and found a light-colored pillowcase on the ground that contained two pistols and ammunition.
Farmer testified that he took a statement from Uber on March 9, 1990, at the police station after Uber had been taken into custody at the trailer park. Before asking Uber any questions, Farmer read Uber his rights, using a Miranda card issued by the police department. Although initially denying any involvement in the Tate robbery, Uber subsequently admitted his participation in the robbery. Three issues are raised on appeal.
 I
Uber contends that the trial court erred in denying his motion to suppress the keys found during a pat-down search of Uber's person because there was no probable cause for Uber's warrantless arrest.
Where a party admits to incriminating behavior and then furnishes law enforcement officials with information of a third party's criminal activity, such information is sufficient to support a finding of probable cause: "Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility — sufficient at least to support a finding of probable cause." United States v. Harris,403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971).
Where, moreover, a person acts against his interest and supplies information which would enhance the chances of his own conviction of a crime, such information supplies "its own indicia of reliability." United States v. Barfield,507 F.2d 53, 58 (5th Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1684,44 L.Ed.2d 105 (1975).
In the instant case, Jordan and Branum, two participants in the robbery/burglary, told police officers that Uber had committed the crime with them, furnished a physical description of Uber, and gave officers information as to where they could find him. The information from Jordan and Branum, who admitted their own involvement in the criminal activity, supplied "its own indicia of reliability" and was clearly sufficient to establish probable cause for Uber's warrantless arrest.
Because Uber's arrest was based on sufficient probable cause, Officer Mayo acted properly in patting Uber down for weapons. A custodial arrest authorizes a search of the arrestee's person. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467,38 L.Ed.2d 427 (1973). When Officer Mayo came across a square object in Uber's pants which he could not identify by touch, he acted legally in retrieving the object for his own safety and that of the other officers present during the arrest.
Because the keys were found incident to a pat-down search made pursuant to a lawful arrest, the trial court properly denied Uber's motion to suppress admission of the keys at trial.
 II
Uber contends that the trial court erred in admitting his confession because (1) it *Page 612 
was the product of an illegal detention, and (2) it was not voluntarily given to police officers. Because Uber's warrantless arrest was based on sufficient probable cause, we shall only address the second prong of Uber's argument herein.
Decisions regarding voluntariness and admissibility are not to be disturbed on appeal unless they are palpably contrary to the great weight of the evidence. Lewis v. State, 535 So.2d 228
(Ala.Cr.App. 1988). The trial court need only be convinced by the preponderance of the evidence that the statement was voluntarily made. Bush v. State, 523 So.2d 538
(Ala.Cr.App. 1988).
In the present case, a hearing on the voluntariness of the confession was held outside the presence of the jury, and the trial court heard all the circumstances surrounding Uber's confession. The record indicates that Lt. Farmer was present during both of Uber's interviews. Farmer testified that neither he nor anyone in his presence or to his knowledge offered Uber any promise or attempted to coerce him into giving a statement.
The record also reveals that Uber was given hisMiranda warnings prior to giving his statement, and that Uber, who had attended high school, specifically told the questioning officer that he was not under the influence of alcohol or drugs at the time he waived his constitutional rights.
Because the record on appeal affirmatively and without conflict proves that Uber's confession was knowingly, intelligently and voluntarily given, the trial court's denial of Uber's motion to suppress the confession was correct.
 III
Uber contends that the trial court erred in denying his motion for judgment of acquittal based upon the ground that the state failed to produce evidence sufficient to corroborate the testimony of accomplice Chris Jordan. We disagree.
Whether an accomplice's testimony is sufficiently corroborated for the case to be submitted to the jury is a question of law. § 12-21-222, Code of Alabama 1975; Ex parteBell, 475 So.2d 609 (Ala. 1985), cert. denied, 474 U.S. 1038,106 S.Ct. 607, 88 L.Ed.2d 585 (1985). It is the jury's role to determine the weight and sufficiency to be accorded such evidence. Lynn v. State, 477 So.2d 1365 (Ala.Cr.App. 1984), rev'd on other grounds, 477 So.2d 1385 (Ala. 1985), cert. denied, 493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989).
The most obvious corroborating evidence presented by the prosecution was contained in Uber's own incriminating statement given to police officers, wherein he admitted going to the Tate's home for the purpose of stealing something. A voluntary confession of an accused is sufficient corroboration of an accomplice's testimony for purposes of § 12-21-222. Adkison v.State, 548 So.2d 606 (Ala.Cr.App. 1988). In addition to Uber's own statement, which corroborated Jordan's testimony, the state proved that keys to the Tate's stolen car were found in Uber's pants pocket.
From the state's evidence set forth above, it is clear that the corroborating evidence was sufficient, and the motion for judgment of acquittal based on this ground was properly denied.
The foregoing opinion was prepared by JAMES H. FAULKNER, a Retired Justice, Supreme Court of Alabama, serving as a judge of this court, and his opinion is adopted as that of this court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur. *Page 613