The appellant, Coleman Pettway, was convicted of trafficking in cocaine, was sentenced to 10 years' imprisonment, and was fined $50,000. He raises three issues in this appeal from that conviction. *Page 327 
 I
The appellant contends that the evidence was insufficient to support his conviction for trafficking.
On February 27, 1991, five Mobile County deputy sheriffs executed a search warrant at an apartment on Zeigler Boulevard in Mobile, Alabama. At trial, the State's case-in-chief consisted of the testimony of two of these deputies, Richard Cayton and Barry Dinkins, and the testimony of the drug analyst, Gary Wallace.[1] Deputies Cayton and Dinkins testified that the officers knocked on the apartment door and announced themselves as police officers. After hearing what Cayton referred to as "noise in the apartment," R. 15, which was more particularly described by Dinkins as "a lot of moving around inside the apartment," R. 41, the officers forced open the door and entered the apartment.
Deputy Cayton testified that, once inside the apartment, he observed two individuals, a male and a female, going toward the rear of the apartment. Cayton stated that he and Deputy Dinkins then went to the rear of the apartment, where they "noticed the bathroom door was shut and tried to open it, it was locked, and heard the toilet flushing." R. 17. At that point, the deputies "kicked in the bathroom door," and found the appellant and Shirley Blackmon in the bathroom. Id. According to Cayton, the appellant was standing in front of the toilet and Ms. Blackmon was lying in the floor with her pants "unzipped like as if she may have been on the toilet." R. 18-19. Cayton testified that Deputy Dinkins retrieved "some money and a clear bag of white powder stuff" from the toilet. R. 19.
After the appellant was handcuffed, Deputy Cayton advised him of his rights. According to Cayton, the appellant stated that he understood his rights. The appellant appeared to Cayton to understand the rights and did not appear to be under the influence of any drugs or alcoholic beverages. The appellant made no statement at the time Cayton informed him of his rights. However, Deputy Clayton testified that, approximately 30 minutes later, while sitting in the living room of the apartment, the appellant, who was not being questioned by the officers and without addressing anyone in particular, "made an open statement that all the drugs was his." R. 22. Despite vigorous cross-examination by defense counsel, Cayton maintained that the appellant's admission was a spontaneous remark, that it was not the result of any questioning by the officers, and that there was no follow-up questioning of the appellant after he had made this admission.[2]
Deputy Dinkins testified that, upon entering the apartment, he saw "several people just running towards the back of the apartment." R. 41. He and Deputies Lee and Cayton gave chase. The officers "hit the bathroom door forcing it open. And several suspects w[ere] inside of that bathroom attempting to flush some type of item in the commode." R. 41. According to Dinkins, there were at least three people in the bathroom, two males and a female (and possibly another female), and these people were "right around the commode." R. 53. Dinkins stated that the appellant was "knocked over in the tub" when the officers forced the bathroom door open and entered the "very small bathroom." R. 42, 53. He further stated that he knew that he had knocked the appellant into the tub "[b]ecause [he] saw when [the appellant] fell." R. 54.
Deputy Dinkins also testified that he "s[aw] the substance going down [the toilet]. So [he] kind of turned and just grabbed it as it was going down, which was bags of white powder, possibly cocaine, several small blue envelopes containing the same white powder, possibly cocaine, some green plant material that was also going *Page 328 
down, possibly marijuana, several other little packages that was also going down. [He] just grabbed what [he] could." R. 42. Dinkins did not hear the incriminating statement allegedly made by the appellant.
The appellant's defense was that the illegal substances belonged to James Collins, the other male present in the apartment, and that he (the appellant) had no knowledge of the presence of the drugs. According to the appellant, he was using the bathroom when the officers arrived. Upon hearing the commotion caused by the officers forcing open the apartment door, he started to exit the bathroom, at which point James Collins ran into the bathroom, knocking him (the appellant) into the tub. While he was sitting in the tub, he saw Collins empty a can into the commode and then flush the commode.
The indictment charged that the appellant did "unlawfully and knowingly sell, manufacture, deliver, or bring into this state, or did knowingly have in his actual or constructive possession, cocaine or a mixture containing cocaine, in excess of 28 grams but less than five hundred (500) grams." CR. 5. It is clear from the evidence adduced at trial that the State was travelling under the "constructive possession" alternative of the indictment. It was therefore incumbent upon the State to establish both that the appellant had constructive possession of the cocaine and that he knew that the cocaine was in the apartment. See Boswell v. State, 570 So.2d 818, 819
(Ala.Cr.App. 1990); Chislom v. State, 565 So.2d 1189,1191 (Ala.Cr.App. 1990).
"To establish constructive possession, the state must show that the accused had dominion and control of the illegal substance itself or of the premises on which the substance was found." Hamilton v. State, 496 So.2d 100, 103
(Ala.Cr.App. 1986). In this case, the State presented absolutely no evidence establishing the appellant's residency in or control of the Zeigler Boulevard apartment, which was leased by Evon Perryman.[3] Consequently, the State cannot rely on the "inference of constructive possession [that] arises when the controlled substance is found on premises owned or controlled by the accused." Donahoo v. State, 505 So.2d 1067,1070 (Ala.Cr.App. 1986) (emphasis omitted). Nevertheless, we find the State's evidence sufficient to support the conviction.
 "[W]hile mere proximity to illegal drugs, mere presence on the property where [illegal drugs] are located, or mere association, without more, with persons who do control [illegal drugs] is insufficient to support a finding of possession, . . . such proximity, presence, or association is sufficient when accompanied . . . with testimony connecting the defendant with the incriminating surrounding circumstances."
United States v. Ratcliffe, 550 F.2d 431, 434 (9th Cir. 1976). "[T]he kinds of circumstances which may provide a connection between a defendant and [illegal drugs] are unlimited and will naturally depend on the facts of each particular case." Temple v. State, 366 So.2d 740, 743
(Ala.Cr.App. 1978). Similarly, a defendant's knowledge of the presence of illegal drugs can be proved by circumstantial evidence, Self v. State, 564 So.2d 1023, 1027
(Ala.Cr.App. 1989), cert. quashed, 564 So.2d 1035 (Ala. 1990), which may include "evidence of acts, or conduct of the accused, from which it may be fairly inferred that he knew of the existence of the contraband at the place where it was found,"Donahoo v. State, 505 So.2d at 1070 (citations omitted).
In view of the evidence presented by the State, it is unreasonable to conclude that the appellant was "merely" present in the Zeigler Boulevard apartment. Officers who forcibly entered the house after hearing noises or movement from within, observed *Page 329 
several individuals running toward the bathroom. The officers, hearing the toilet being flushed, then forcibly entered the locked bathroom, where the appellant and at least one other individual were present. Illegal substances were circling in the toilet and were retrieved by the officers. Shortly thereafter, the appellant admitted ownership of the illegal drugs. We think that the jury could have reasonably inferred from this evidence both that the appellant was exercising dominion and control over the cocaine and that he had the requisite knowledge of the presence of the cocaine. SeeState v. Papillion, 556 So.2d 1331, 1.335-36 (La.App. 1990) (evidence, including facts that defendant, "upon seeing the police officers, . . . slammed the door and ran into the bathroom in an apparent attempt to flush evidence down the commode," was sufficient to support possession conviction);State v. Forbes, 104 N.C. App. 507, 410 S.E.2d 83, 85
(1991), review denied, 330 N.C. 852, 413 S.E.2d 554 (1992) (evidence, including facts that, as officers announced their presence, they heard "sounds of people running throughout trailer and of toilet flushing," and that defendant was found in close proximity to bathroom where cocaine crystals were found floating in the toilet, was sufficient to support possession conviction).
In connection with this issue, the appellant makes much of the fact that there were numerous discrepancies in the testimony of Deputies Cayton and Dinkins. While the deputies' testimony did not match on every point, their testimony was in accord on the most salient point: the appellant was found in the bathroom where illegal substances were being flushed down the toilet. Where, as here, the State establishes a prima facie case, "contradictory and conflicting testimony presented by State witnesses presents an issue of credibility which should be submitted to the jury." Currin v. State,535 So.2d 221, 222 (Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala. 1988).
 II
The appellant maintains that he is due a new trial because the prosecutor failed to disclose, prior to trial, the statement allegedly made by the appellant admitting ownership of the drugs.
On April 26, 1991, the trial court entered a written order directing the prosecutor to "produce or make available to the Defendant's attorney" various items, including "[t]he substance of any oral statements made by the Defendant . . . or if the District Attorney knows of any statements or spontaneous remarks made while the Defendant [wa]s in the custody of the police or during the investigation."[4] CR. 8. On May 30, 1991, the prosecutor filed a written "Response to Discovery Order," in which he stated that there were no statements by the defendant. CR. 10. However, as noted in Part I above, at trial the prosecutor elicited testimony from Deputy Cayton that, shortly after his arrest, the appellant spontaneously claimed ownership of the drugs in the apartment.
No objection was interposed at the time Deputy Cayton, the first of the State's three witnesses, testified regarding the incriminating statement. After the State had rested its case-in-chief and after the appellant and another defense witness had testified, defense counsel sought to call the prosecutor as a witness. The trial court refused to permit him to do so and excused the jury. The following then occurred:
 "MR. ASHBEE [defense counsel]: Judge, Mr. Scully [assistant district attorney] provided me discovery in this case, including a response to the discovery order signed by Mr. Scully, which says that: Number one, statements of the defendant. Mr. Scully said there are none.
 "THE COURT: If you had brought that to my attention —
"MR. ASHBEE: Judge, I didn't know about it.
 "THE COURT: — that statement would not have gotten in. *Page 330 
 "MR. ASHBEE: I didn't know about it, Judge, until after it was made because of my lack of involvement in this case.
 "MR. SCULLY: That's not true. We told you about it out in the hall. I was not aware of it until yesterday.
 "Judge, I might note, I was not aware of it until yesterday. And I did tell you out in the hall this morning that he — Deputy Cayton told you out in the hall while I was standing there discussing this —
 "MR. ASHBEE: That's my point. This morning they told me as I'm walking in in the courtroom.
 "THE COURT: What I'm saying is, had you brought that response to my attention, the statement would have never gotten into evidence.
 "MR. ASHBEE: Well, I'd move at this time to exclude that statement and for the jury to be admonished not to take that into consideration in this case, Judge. . . .
 "THE COURT: It's in now. It's relevant. There was a lot of Mirandizing going on.
"MR. ASHBEE: Well, can I get this —
 "THE COURT: Sure. You can mark it as an exhibit. There was a lot of Mirandizing going on. You knew exactly where the prosecutor was going with that line of questioning. He was obviously going to solicit a statement made by your client.
 "Anyhow, Mary [court reporter], mark that as Defense next exhibit for identification.
 "(Defendant's Exhibit A [the prosecutor's written "Response to Discovery Order"] was marked for identification.)
 "MR. ASHBEE: Your Honor, since it's been marked as Defendant's Exhibit A, I'd like to move for admission in whatever way I can get this into evidence.
 "THE COURT: Well, I will instruct the jury if you want that in response to the Court's order in this case providing discovery to be supplied to the Defendant, that in response to the first order it was going to say that there were no statements made by the Defendant." R. 140-43.
The statement at issue clearly falls within the purview of the trial court's discovery order and Rule 16.1(a), A.R.Crim.P.,[5] and should have been disclosed prior to trial. This Court has repeatedly stated that it "views the failure to comply with [the discovery principles embodied in Rule 16, A.R.Crim.P. (formerly Rule 18, A.R.Crim.P.Temp.),] with particular disfavor and condemnation." Morrison v.State, 601 So.2d 165, 173 (Ala.Cr.App. 1992); McLemorev. State, 562 So.2d 639, 645 (Ala.Cr.App. 1989);Buchannon v. State, 554 So.2d 477, 486 (Ala.Cr.App.), cert. denied, 554 So.2d 494 (Ala. 1989), overruled on other grounds, Pardue v. State, 571 So.2d 333 (Ala. 1990). We have also made it clear, however, that not every violation of Rule 16 requires the suppression of the undisclosed evidence. E.g., Buchannon, 554 So.2d at 486; Fortenberry v.State, 545 So.2d 129, 142 (Ala.Cr.App. 1988), affirmed,545 So.2d 145 (Ala. 1989), cert. denied, 495 U.S. 911,110 S.Ct. 1937, 109 L.Ed.2d 300 (1990); McCrory v. State,505 So.2d 1272, 1279 (Ala.Cr.App. 1986). Instead, Rule 16.5 "gives a trial judge a number of options to consider in imposing sanctions on a party who has failed to comply with the court's discovery order." Clifton v. State, 545 So.2d 173, 178
(Ala.Cr.App. 1988).
Rule 16.5 provides in pertinent part:
 "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection; may grant a continuance if requested by the aggrieved party; may prohibit the party from introducing evidence not disclosed; or may *Page 331 
enter such order as the court deems just under the circumstances."
Whether and to what extent a trial court imposes sanctions for non-compliance with Rule 16 rest "within the sound discretion of the court." McCrory v. State, 505 So.2d at 1279. However, before a trial court can impose any sanction, the court obviously must be made aware of a party's failure to comply.
Rule 16 does not exist in a vacuum; it is subject to the general principle that objections must be made in atimely fashion. See generally C. Gamble, McElroy'sAlabama Evidence § 426.01(3) (4th ed. 1991). Cf.Robinson v. State, 584 So.2d 533, 538 (Ala.Cr.App.), cert. quashed, 584 So.2d 542 (Ala. 1991) (recognizing that whileEx parte Marek, 556 So.2d 375 (Ala. 1989), held that "a motion for mistrial compensates for the lack of an objection or a motion to strike," Marek did not "eliminate the requirement that a motion for mistrial be timely made,"i.e., that the motion be made "immediatelyafter the offending question") (emphasis in original).
A trial court should be informed of a party's failure to comply with discovery procedures as soon as the aggrieved party is aware of the non-compliance. At a minimum, the aggrieved party must object to the undisclosed evidence at the time thatevidence is offered and must state the specific grounds for the objection, i.e., that the offending party failed to comply with the discovery order or some other aspect of Rule 16. See Roberson v. State, 595 So.2d 1310,1316 (Miss. 1992); State v. Moore, 731 S.W.2d 351, 353
(Mo.App. 1987). The requirement of a timely objection simply gives the trial court the opportunity to take corrective action where such action is warranted, see State v. Willis,438 So.2d 605, 613 (La.App. 1983), and is in keeping with standard trial procedure and evidentiary rules.
In the present case, defense counsel, by his own admission, learned of the alleged statement (and the prosecutor's failure to disclose it prior to trial) on the morning of the trial. However, he did not inform the trial court of the prosecutor's non-compliance until long after Deputy Cayton had testified regarding the statement.[6] The objection to and the motion to exclude the statement made after the State had rested and after two defense witnesses had testified were clearly untimely. "To be timely, an objection must be interposed as soon as the ground for the objection becomes apparent."Watson v. State, 439 So.2d 762, 769 (Ala.Cr.App. 1983). Accord Leverette v. State, 462 So.2d 972, 979
(Ala.Cr.App. 1984). As the trial court indicated, the ground for this objection became apparent when the prosecutor began laying the proper Miranda predicate prior to questioning Deputy Cayton about the appellant's statement. Similarly, a motion to exclude certain testimony of a witness comes too late when it is made at the end of the examination of that witness. See Ruffin v. State, 582 So.2d 1159, 1163
(Ala.Cr.App. 1991); Spellman v. State, 500 So.2d 110,113 (Ala.Cr.App. 1986). Here, the motion to exclude was not even made at the close of Deputy Cayton's testimony — it was made after four intervening witnesses had testified.
The trial court's sanction in this case was to inform the jury, prior to the closing arguments of the attorneys and over the objection of the prosecutor, that a pre-trial order had been entered directing the prosecutor to disclose any statements made by the appellant, that the prosecutor had responded that there were no statements by the appellant, and that the prosecutor claimed that he did not know of the statement at the time he filed his discovery response. R. 163-64. While this sanction *Page 332 
was somewhat unorthodox, we think that it is within the range of sanctions contemplated by the "such other order as the court deems just under the circumstances" language of Rule 16.5. It also comports with the precept that "the trial court should not impose a sanction which is harsher than necessary to accomplish the goals of the discovery rules." McCrory v. State, 505 So.2d at 1279.
Moreover, the appellant has failed to demonstrate that he was prejudiced by the late disclosure of the statement, which is a prerequisite for a reversal on this issue. See McLemore v.State, 562 So.2d at 645; Buchannon v. State, 554 So.2d at 486. Defense counsel vigorously cross-examined Deputy Cayton regarding the statement during the State's case-in-chief, implying that it was ludicrous for the appellant to have made the statement under the circumstances described by Cayton. During the State's rebuttal case, defense counsel conducted a spirited cross-examination of Deputy Cayton with regard to when Cayton told the prosecutor about the appellant's statement and why he delayed in doing so.
The appellant's defense was essentially to pit his version of the events against that of the officers, while denying that he knew of the presence of the cocaine. Even without testimony regarding the statement, which the appellant denied making, it was the appellant's word against the officers. Therefore, it does not appear that the statement placed him in any further disadvantage in his defense. Cf. Petite v. State,520 So.2d 207, 209 (Ala.Cr.App. 1987) (defendant "fail[ed] to show any specific disadvantage [his defense] suffered" by the prosecutor's failure to disclose his statement prior to trial). Further, we think it indicative of a lack of prejudice to the appellant that defense counsel did not object to the statement until the trial was nearly concluded. Cf. Ex parteKennedy, 472 So.2d 1106, 1111 (Ala.) (even in a death case, where no objection is necessary to preserve error under Rule 45A, A.R.App. P., the failure to object "weigh[s] against any claim of prejudice"), cert. denied, 474 U.S. 975,106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
We note that the Alabama Supreme Court has twice reversed a defendant's conviction because the prosecutor failed to disclose an extra-judicial statement made by the defendant even though under a pretrial discovery order to disclose such statements. See Ex parte Motley, 534 So.2d 564
(Ala. 1988); Ex parte Lambert, 519 So.2d 899
(Ala. 1987). In both of those cases, however, the defendant interposed a timely objection to the introduction of the statement. Furthermore, as we have previously noted, "neither of those cases contained any discussion of the other sanctions for non-disclosure contained in Rule [16.5]," and both cases "apparently involved facts from which the Supreme Court concluded that a reversal was the only sanction which would 'accomplish the goals of the discovery rules.' " McLemorev. State, 562 So.2d at 646. We therefore findMotley and Lambert distinguishable from the case at bar.
 III
There was no objection on any ground to the trial court's oral instructions to the jury. Consequently, the appellant "is procedurally barred from raising the issue of whether the trial court properly instructed the jury on reasonable doubt [underCage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328,112 L.Ed.2d 339 (1990)]." Ex parte Beavers,598 So.2d 1320, 1324-25 (Ala. 1992). Accord Minshew v. State,594 So.2d 703, 714 (Ala.Cr.App. 1991). See also Rule 21.2, A.R.Crim.P.
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Wallace's testimony established that white powdery substances seized during the search were cocaine and that the total weight of the cocaine seized was 38.68 grams. The identification and weight of the cocaine are not at issue in this appeal.
[2] While this incriminating statement is challenged in this appeal on other grounds, see Part II below, there was no suggestion at trial, nor is there one in this appeal, that the statement was involuntary.
[3] Ms. Perryman testified in the appellant's behalf. On cross-examination by the prosecutor, Ms. Perryman acknowledged that she and the appellant were "going together" at the time of the search. R. 100. Although she denied that the appellant "was living with [her]," she did testify that the appellant would "c[o]me from out of town" and "stay the weekend with [her]." R. 100-01. This testimony, however, was given after the appellant made his motion for judgment of acquittal and cannot be considered in determining whether the State presented a prima facie case. See Kimbrough v. State,544 So.2d 177, 181 (Ala.Cr.App. 1989).
[4] The record before us does not contain a motion for discovery filed by the appellant.
[5] Rule 16.1(a) relates to the discovery of statements made by a defendant and requires, among other things, that the prosecution, upon proper motion by the defendant, "[d]isclose the substance of any oral statements made by the defendant, before or after arrest, to any law enforcement officer, official, or employee which the state/municipality intends to offer in evidence at the trial."
[6] Rule 16.3 imposes a continuing duty to disclose on the parties and requires a party who "discovers additional evidence or decides to use additional evidence, which evidence has been subject to discovery under this rule, . . . [to] promptlynotify the court and the opposing party of the existence of the additional evidence." (Emphasis added.) Obviously, the prosecutor did not comply with the portion of this rule requiring him to notify the trial court of the appellant's alleged statement. We have previously signified our disapproval of the failure to comply with Rule 16. However, the prosecutor's failure to comply with Rule 16.3 does not excuse the appellant's failure to object to the testimony regarding the statement. *Page 333