[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 545 
The appellant, Dallas DeWitt Smith, was indicted for the murder of Brenda Fay Strong. § 13A-6-2, Code of Alabama 1975. A jury found him guilty as charged in the indictment. The appellant was sentenced to life in prison pursuant to the Habitual Felony Offender Act.
The State's evidence tended to show the following. The appellant and Brenda were living together in a mobile home park in Covington County, Alabama. On September 17, 1991, the appellant and Brenda had been drinking and arguing. Testimony from *Page 546 
neighbors tended to show that the appellant and Brenda often argued. Ricky White, a neighbor and friend of both the appellant and Brenda, testified that approximately a month before the victim's death, he heard the appellant tell Brenda that if she ever left him again, he would kill her. Some of the neighbors testified that sometime before the shooting Brenda appeared to have been beaten. Another neighbor testified that Brenda had told her that the appellant had held a gun to her head many times.
White testified that on September 17, 1991, he went into the appellant's mobile home after another neighbor had requested that he check on Brenda. White said that he saw that Brenda had been shot in the head. According to White, Brenda was sitting on the couch and a .22 caliber pistol was lying on her left shoulder. White testified that he left the appellant's mobile home and that the appellant, who was outside at this time, made several statements to him. White testified that the appellant told him that he had given Brenda the gun, but that he did not think that she would kill herself. White also said that the appellant told him that he woke up when he heard the shot and that he then saw that the victim was dead. White said that the appellant also told him that Brenda had pulled the appellant's hand to her head and had pulled the trigger. White also testified that the appellant owned the .22 caliber pistol that was later identified as the weapon used to shoot the victim. There was testimony that Brenda died as a result of a gunshot wound to her left temple.
Investigators testified about the position of the victim and the pistol after the shooting and about their test findings. Maxwell Hooks, an investigator with the sheriff's department, testified that the appellant told him that the victim had shot herself. He stated, however, that the weapon, which was lying on the victim's left shoulder, was positioned in an unusual manner for a suicide. A forensics investigator, Mark Day, testified that when the victim was found the pistol was lying on her left shoulder, that her left hand was raised, and that her right hand was by an ashtray. He testified that there was a gunshot wound to the victim's left temple. A forensic scientist, William E. Moran, testified that residue from a gunshot contains barium and antimony. He further stated that neither of the victim's hands tested positive for barium or antimony. He stated that the appellant's hands tested positive for barium, but negative for antimony. The victim's mother testified that the victim was right-handed and that she did not use her left hand for acts requiring skill or dexterity.
Joe Saloom, a firearms expert, testified that he found no fingerprints on the pistol. He stated that no blood was found on the muzzle of the pistol, although blood would likely be present if the death were by suicide and the pistol had been held close to the head when fired.
The appellant was read his Miranda rights and signed waiver forms before giving in-custody statements to the police on September 17, 1991, and September 19, 1991.
 I
The appellant first argues that he was denied a fair trial because, he says, the State suppressed allegedly exculpatory evidence requested through discovery, in violation of the principles set forth in Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Alabama Rules of Criminal Procedure. The appellant contends that the State erroneously suppressed a statement made by Ricky White to law enforcement officials, the criminal record of Ricky White, photographs of the scene, and the substance of statements made by the appellant before his arrest.
 A
Ricky White made a statement to law enforcement officials that he had heard the victim say that "one of these days he [the appellant] is going to make me kill myself or kill him one." The appellant's main defense was that the victim had committed suicide. This statement was not disclosed to the defense before trial. When defense counsel became aware of the existence of the statement, the trial court conducted an in-camera examination of White's statement and determined that the statement should be disclosed to the appellant. After defense counsel *Page 547 
learned of White's statement, he was allowed to cross-examine White about the statement.
"This court has previously determined that '[e]ven where there is total nondisclosure of information the test is whether the use of the information at trial would have changed the result by creating a reasonable doubt where one did not otherwise exist.' " Adler v. State, 591 So.2d 133, 134
(Ala.Crim.App.), cert. denied, 591 So.2d 135 (Ala. 1991). In this case, the statement made by White was disclosed to the appellant early in the trial. The statement was available for defense counsel to use in cross-examining White and the investigator who had taken the statement. Defense counsel adequately presented as a defense that the victim's death was the result of suicide. The appellant cannot establish that the earlier disclosure of White's statement would have changed the result of the trial.
 B
The appellant also argues that the failure of the trial court to order the State to disclose to him Ricky White's criminal record, involving the issuance of fraudulent checks, warrants reversal. A defendant is not entitled to the general disclosure of criminal records of a witness for the State; it is within the trial court's discretion to deny the disclosure of that information or material that may impeach the credibility of a State's witness. Davis v. State, 554 So.2d 1094, 1100
(Ala.Crim.App. 1984), aff'd, 554 So.2d 1111 (Ala. 1989), cert.denied, 498 U.S. 1127, 111 S.Ct. 1091, 112 L.Ed.2d 1196 (1991);Mardis v. State, 423 So.2d 331, 334 (Ala.Crim.App. 1982).
Additionally, in this case, defense counsel knew that White had a criminal record and he attempted to impeach White's credibility with that information. The State objected to defense counsel's reference to White's criminal conviction and the trial court held that White could not be questioned regarding his criminal conviction. Thus, the trial court effectively ruled that White's criminal conviction was not subject to disclosure by the State. We hold that the trial court did not abuse its discretion in not ordering the State to disclose White's criminal record, under the circumstances of this case, and that the appellant has failed to establish that further information about White's record would have changed the result of the trial.
 C
The appellant argues that the State's failure to provide him with photographs of the scene that were not used during the trial requires reversal. In Ex parte Cammon, 578 So.2d 1089,1091 (Ala. 1991), the Alabama Supreme Court stated that to establish a Brady violation the defendant must establish: (1) that the prosecution suppressed the evidence; (2) that the evidence was favorable to his defense; and (3) that the evidence was material. See also Gray v. State, 600 So.2d 1076
(Ala.Crim.App. 1992).
In this case, the prosecution knew of the existence of the photographs and, if the photographs had not been provided by the prosecution, the first Cammon factor would have been met. However, numerous photographs depicting the scene were introduced into evidence and referred to by both parties. Thus, we fail to see the materiality of additional photographs. Moreover, according to the State, the photographs allegedly not produced were included in a forensic report that was provided to defense counsel; thus, the prosecution did not suppress the photographs because defense counsel had access to the photographs before trial. Even had the photographs been withheld, we do not believe that the additional photographs would have altered the outcome of the trial. See Adler.
 D
The appellant further argues that the State's failure to produce the substance of the appellant's statement to Investigator Hooks on the night of the shooting to the effect that the victim had shot herself violated Rule 16.1(a)(2), Ala.R.Crim.P., and is ground for a new trial. Rule 16.1(a)(2), Ala.R.Crim.P., provides that upon request of the defendant, the prosecutor, within the prescribed time period will "[d]isclose the substance of any oral statements made by the defendant, before or after arrest, to any law enforcement officer, official, or employee *Page 548 
which the state/municipality intends to offer in evidence at the trial."
The statement was not transcribed; therefore, the prosecution could disclose only the substance of the statement. The State argues that the substance of this voluntary statement was disclosed to defense counsel during discovery. After reviewing the record, we find no disclosure by the State of the substance of this particular voluntary statement made to Investigator Hooks. Investigator Hooks testified during the State's case-in-chief as to the appellant's statement that the victim had shot herself. No objection was made when Investigator Hooks so testified.
We hold that the failure of the State to disclose the substance of the appellant's statement does not constitute a ground for a new trial. In Pettway v. State, 607 So.2d 325
(Ala.Crim.App. 1992), this Court stated that a trial judge has discretion as to whether to impose sanctions for noncompliance with Rule 16. However, before any sanctions may be imposed for failing to disclose evidence, the trial court must be made aware of a party's failure to comply. We stated, "At a minimum, the aggrieved party must object to the undisclosed evidence atthe time that evidence is offered and must state the specific grounds for objection." Because there was no objection made to Investigator Hooks's testimony concerning the statement, we find no error in the trial court's refusal to grant a new trial.
Additionally, we note that the State disclosed to defense counsel before trial two other statements made by the appellant. One of those statements, taken on the night of the incident, was transcribed. In this statement, the appellant said that the victim shot herself. The fact that the State has disclosed a statement containing the same information as the undisclosed statement indicates a lack of prejudice to the appellant as a result of the State's failure to disclose. InPettway, we held that a demonstration of prejudice is a prerequisite for a reversal based on an alleged violation of Rule 16, Ala.R.Crim.P. Because we can find no prejudice in this case, we can find no ground on which a new trial should have been granted.
 II
The appellant next contends that the trial court committed reversible error by failing to order the Covington County district attorney's office recused from the trial. After the appellant was arrested but before a preliminary hearing, Mr. Charles Alex Short was appointed as counsel for the appellant. Mr. Short met with the appellant at the county jail for approximately 15 minutes. Shortly thereafter, Mr. Short accepted employment with the district attorney's office. He filed a motion to withdraw as counsel, and that motion was granted, and new counsel was appointed before the preliminary hearing.
The appellant filed a motion to have the district attorney's office recuse itself. A hearing was held on the motion, in which Mr. Short testified that he has not discussed this case with anyone at the district attorney's office, that he did not bring any file regarding this case to the district attorney's office, and that he did not and would not assist the district attorney's office in any manner toward prosecuting the appellant.
In Hannon v. State, 48 Ala. App. 613, 266 So.2d 825 (1972), the defendant had conferred with a public defender who was later elected district attorney. Subsequent to being elected, the district attorney did not take part in prosecuting the defendant and did not give his assistants any information obtained during his conversations with the defendant. We affirmed the defendant's conviction in Hannon because we found no breach of the attorney-client relationship. Our holding inHannon applies to this case. Mr. Short did not breach the attorney-client relationship because he abstained from any participation in the prosecution of the appellant and he revealed no confidential information regarding his former client to anyone at the district attorney's office.
 III
The appellant next argues that he was denied a fair trial because the trial court admitted into evidence the appellant's tape-recorded statement. Specifically, the appellant *Page 549 
asserts that he was so intoxicated when he gave that statement that he could not have knowingly and voluntarily waived hisMiranda rights. The appellant's blood alcohol content on the night he gave this statement was .232%, and the tape recording contains several unintelligible comments made by the appellant. However, these facts are insufficient to support the appellant's assertion that his statement was not made knowingly and voluntarily and to thereby render the statement inadmissible.
We have held that the intoxication of the accused when he makes a statement does not affect the admissibility of the statement unless the accused is intoxicated to the extent of mania. Parker v. State, 589 So.2d 773 (Ala.Crim.App. 1991);Callahan v. State, 557 So.2d 1292 (Ala.Crim.App. 1989), aff'd,557 So.2d 1311, cert. denied, 498 U.S. 881, 111 S.Ct. 216,112 L.Ed.2d 176 (1990). The level of the accused's intoxication may, however, affect the weight or credibility of the statement. Parker.
In determining whether the appellant made his statement voluntarily, we must look to the totality of the circumstances.Rogers v. State, 417 So.2d 241, 248 (Ala.Crim.App. 1982). From the totality of the circumstances, we conclude that the appellant understood that he had the right to remain silent and that he had a right to confer with an attorney. Nevertheless, the appellant indicated that he was willing to give a statement and to have that statement recorded. The appellant signed a waiver of his rights and had no questions when asked whether he understood his rights.
Once we have determined that the appellant was properly informed of and understood his Miranda rights, we must next examine the voluntariness of the statement. The determination of voluntariness of a statement and its admissibility is left to the trial court's discretion, and the court's exercise of that discretion will not be disturbed on appeal unless the judgment is palpably contrary to the great weight of the evidence. Uber v. State, 596 So.2d 608, 612
(Ala.Crim.App. 1991); Stariks v. State, 572 So.2d 1301, 1304
(Ala.Crim.App. 1990). The trial court listened to the tape-recorded statement and determined that the appellant was not so intoxicated that his statement was involuntary and that he was not coerced into making the statement. The appellant was cooperative and spoke without reservation. Based upon these circumstances and our standard of review, we hold that the trial court's determination was not contrary to the great weight of the evidence.
 IV
The appellant further argues that he was denied the right to a fair trial because while awaiting trial he was given a polygraph test in connection with another case. Specifically, the appellant asserts that the State failed to sufficiently respond to discovery requests regarding the questions posed during the test and the results of the test. The appellant further asserts that taking the polygraph test, at which the appellant's trial counsel was not present, violated the appellant's Sixth Amendment right to counsel. Last, the appellant argues that the polygraph test was actually not administered in connection with another case, but that the other case was merely used as a sham by the State to determine whether the appellant was telling the truth about his involvement in the death of the victim in this case.
 A
First, we hold that the State sufficiently responded to the appellant's discovery request regarding the polygraph test. The prosecution asserts that it did not request the polygraph test. The prosecution discovered at some point during discovery that the Alabama Department of Public Safety had administered the polygraph test while investigating a matter unrelated to the charged offense. The prosecution informed defense counsel that it would provide defense counsel with the information received regarding the polygraph test. After reviewing the record, we find that the prosecution did, in fact, provide defense counsel with the information regarding the polygraph test that the prosecution received from the Alabama Department of Public Safety. The prosecution did not request the polygraph and it did not *Page 550 
attempt or intend to use the polygraph results at trial. No error occurred.
 B
We also hold that the appellant's Sixth Amendment right to counsel was not violated by his counsel's absence during the administration of the polygraph test. As the State and the appellant aptly discuss, an accused can voluntarily waive his right to counsel. Riley v. State, 501 So.2d 551
(Ala.Crim.App. 1986). The record on appeal establishes that the appellant had effectively waived his right to counsel in the matter, unrelated to this offense, that was the subject of the polygraph test before the test was administered to him. The polygraph report, which was never used during the trial of this case, states that the appellant signed a waiver of counsel form and a voluntary consent form. Based upon the evidence that the appellant voluntarily waived his right to counsel, we hold that the appellant was not denied a fair trial as a result of being given a polygraph test in an unrelated matter.
 C
The appellant contends that the polygraph test was not actually given in connection with an unrelated matter, but that the other matter was a pretext created to determine his truthfulness in this case. The appellant argues that because no charges were brought against him in this unrelated matter after the polygraph test was given, one must conclude that polygraph test was given to aid the prosecution in this case. We disagree.
No evidence suggests that the prosecution in this case was in any way involved with the administration of the polygraph test. The evidence does suggest that the prosecution never intended to use the results of the polygraph test in any manner and that the appellant voluntarily submitted to the test, knowing that it pertained to an unrelated case. We fail to find any evidence to suggest that the prosecution participated in the taking of the polygraph test to assist its prosecution of the appellant in this case. No error occurred.
 V
The appellant next argues that the trial court denied him a fair trial by allocating to him only $900 with which to procure an expert witness and investigator. We disagree.
The appellant requested that the trial court allocate to him funds to hire an investigator and an expert. His request was initially denied. After a lengthy discussion with defense counsel, the trial court allocated $900 to be used by defense counsel to obtain a firearms expert to perform ballistics tests on the gun which killed the victim. This amount was set after defense counsel stated that $900 would be sufficient.
It is clear from a review of Alabama cases that in order for an indigent defendant to be entitled to funds with which to hire an expert, the defendant must demonstrate a need for the funds. Tarver v. State, 500 So.2d 1232 (Ala.Crim.App.),aff'd, 500 So.2d 1256 (Ala. 1986), cert. denied, 482 U.S. 920,107 S.Ct. 3197, 96 L.Ed.2d 685 (1987); Hold v. State,485 So.2d 801 (Ala.Crim.App. 1986).
In this case, the trial court allocated $900 to the appellant because he had demonstrated a need for that amount. We can find in the record no request from defense counsel for additional funds. We hold that the appellant was not denied a fair trial because additional funds were not allocated to him, since the appellant did not demonstrate a need for additional funds.
 VI
The appellant next contends that the trial court committed four errors requiring reversal of his conviction.
 A
First, the appellant contends that the trial court erred in failing to grant the appellant's motion for a mistrial, grounded on the fact a newspaper article concerning his case was published during the course of the trial. We disagree.
The trial court properly instructed the jury to refrain from reading newspapers *Page 551 
or watching or listening to other news media. In fact, after an article about the case was published in a local newspaper, the trial judge asked the jurors if they had followed his instruction not to read newspapers. The jurors responded that they had.
The appellant correctly cites Thomas v. State, 473 So.2d 627
(Ala.Crim.App. 1985), for the proposition that jurors should not be permitted to read newspaper accounts of the case they are deciding that are calculated to affect their verdict. However, if the defendant cannot show that he was prejudiced, he is not entitled to a mistrial. Smitherman v. State,627 So.2d 1116 (Ala.Crim.App. 1993); see also, Smith v. State,588 So.2d 561, 579 (Ala.Crim.App. 1991). In this case, the appellant cannot establish that any of the jurors read the newspaper article regarding the trial; therefore, he cannot produce any evidence that the jury's verdict was affected by the article or that he was prejudiced. The trial court did not err in refusing to grant the appellant's motion for a mistrial.
 B
The appellant also argues that the trial court erred in overruling his objection and permitting Investigator Hooks to testify during redirect examination for the State that the gun by which the victim was killed was found in an unusual position for the victim's death to have resulted from suicide. The appellant specifically argues that the State should have had to qualify Hooks as an expert witness when defense counsel objected to Hooks's testimony.
However, a careful examination of the record reveals that Hooks gave the same testimony during direct examination and defense counsel did not object. Permitting Hooks to testify as to the unusual position of the gun over defense counsel's objection during redirect examination constitutes harmless error because the defense counsel did not object to the same testimony during examination. See A.R.App.P. 45; Cure v. State,600 So.2d 415, 420 (Ala.Crim.App.), cert. denied,600 So.2d 421 (Ala. 1992) (prejudicial error may not be predicated on the admission of evidence that has been admitted without objection at some other stage of the trial).
 C
The appellant also argues that the trial court erred in allowing Ms. Laura Shevlin to testify as an expert in regard to the effects of alcohol on human behavior. We disagree.
"The question of whether a particular witness will be allowed to testify as an expert, and the scope of that expert testimony, are largely discretionary with the trial court, and that decision will not be disturbed on appeal without a showing of palpable abuse." Ellingwood v. Stevens, 564 So.2d 932, 935
(Ala. 1990); see also General Motors Corp. v. Johnston,592 So.2d 1054 (Ala. 1992); Henry v. Butts, 591 So.2d 849
(Ala. 1991).
Here, the appellant argues that Ms. Shevlin, a forensic scientist specializing in toxicology, was not properly qualified as an expert on the effects of alcohol on human behavior because, he says, she has not conducted any tests concerning the effects of blood alcohol level on a person's physical abilities. Ms. Shevlin testified, however, that she has read many studies evaluating individuals' impediments in correlation to their blood alcohol content. She has testified on many occasions with regard to the behavioral and physiological effects of blood alcohol levels on individuals. She has taken courses in toxicology and pharmacology that have covered the subject of the effect of blood alcohol levels on individuals and she has attended seminars and scientific meetings concerning the subject. Based upon Ms. Shevlin's testimony and her qualifications, we hold that the trial court did not abuse its discretion in allowing Ms. Shevlin to testify with regard to the effects of alcohol on human behavior.
 D
The appellant further contends that the trial court erred in failing to properly instruct the jury that one may be so intoxicated as to render an individual incapable of forming the specific intent necessary to be convicted of murder.
Before the jury began deliberations, the trial court properly instructed the jury on murder, manslaughter, and voluntary intoxication. *Page 552 
During deliberations, the jury requested an additional instruction regarding the difference between murder and manslaughter when the willful use of alcohol is involved. The trial court told defense counsel and the prosecution what it intended to say to the jury. The State argues that because defense counsel announced that he was satisfied with the trial court's response and had no objections to the trial court's instruction, that the appellant has waived any alleged error with regard to the jury instructions.
We hold that the trial court properly instructed the jury with regard to the effect of intoxication on the ability of a defendant to form specific intent for murder. In response to the jury's question, the trial court stated in part:
 "Murder requires that the defendant act with intent. A person acts intentionally when it is his purpose to cause the death of another person. . ..
 "[I]f you find from the evidence that the defendant was voluntarily intoxicated to the extent that he could not form the necessary specific intent to cause death then in that event you could not convict him of murder. . . ."
In this case, the trial court's charge sufficiently instructed the jury in regard to the difference between murder and manslaughter where voluntary intoxication is involved. We find no error.
 VII
The appellant also argues that he received ineffective assistance of counsel and that he is therefore entitled to a new trial. At the outset, we note that the appellant must establish (1) that his trial counsel's performance was deficient and (2) that he was prejudiced by his trial counsel's deficient performance. Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); O'Neil v. State,605 So.2d 1247 (Ala.Crim.App. 1992).
 A
The appellant contends that defense counsel's failure to make a Batson motion when the State struck two of the three black veniremembers constitutes ineffective assistance of counsel and necessitates a new trial. We disagree.
At a hearing on a post-trial motion regarding this issue, the State presented race-neutral reasons for its challenges to the two black veniremembers. One black veniremember was struck because he had previously been represented by trial counsel and the other was struck because he had previously been prosecuted by the district attorney's office. These are valid race-neutral reasons for exercise of peremptory challenges. Freeman v.State, 594 So.2d 1300 (Ala.Crim.App. 1991).
The appellant argues that the State's offering race-neutral reasons for its peremptory challenges at a hearing on a post-trial motion does not obviate trial counsel's ineffectiveness for failing to timely raise a Batson motion. InGuthrie v. State, 598 So.2d 1013, 1020 (Ala.Crim.App. 1991),cert. denied, 598 So.2d 1020 (Ala. 1992), this Court held that it was improper for the State to attempt to supplement the record with reasons for exercising its peremptory challenges against black veniremembers. In Guthrie, however, the prosecution had failed to engage in meaningful voir dire questioning to support its reasons for challenging the black veniremembers. In this case, the appellant does not claim that the State failed to present valid race-neutral reasons supported by its voir dire questioning. In fact, because the State gave valid race-neutral reasons for its peremptory challenges in this case, the appellant cannot show that he was prejudiced by his counsel's failure to raise a Batson motion. Therefore, the appellant cannot meet the second prong ofStrickland and he is not entitled to a new trial.
 B
The appellant also asserts that his trial counsel was ineffective for failing to investigate the criminal record of Ricky White, a State's witness. However, the record reveals that the appellant's trial counsel was aware of Mr. White's criminal history. In fact, the trial court sustained an objection made by the State to the appellant's trial counsel's *Page 553 
questioning of Mr. White concerning a criminal conviction. The appellant has not established that his trial counsel failed to investigate the criminal record of the witness. Thus, appellant cannot establish that his counsel's conduct was deficient in this regard.
 C
Last, the appellant asserts that his trial counsel was ineffective for failing to file a motion to sequester the jury, which would allegedly have prevented the jurors from reading potentially prejudicial newspaper accounts of the trial. This argument is without merit.
The trial court admonished the jury to avoid the news media's coverage of the trial, and, in fact, questioned the jurors as to whether they followed his instructions, to which the jurors responded that they had. Therefore, the appellant, again, fails to meet the second prong of Strickland by failing to present evidence that he was prejudiced by his trial counsel's failure to file a motion to sequester the jury.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.